## Mayer's Appeal.

1. A party-wall erected by Simpson projected unintentionally in several places slightly beyond the proper line, over land of Mayer who was erecting a building at the same time, by contract with a builder who was to pay for the party-wall. He knew the wall was projecting, but went on and paid for it; Simpson completed his building without correcting the projection. The court under the circumstances refused a decree to take down the wall.

2. This occupation of part of plaintiff's lot did not give defendant any title to it nor affect plaintiff's right to damages.

3. Vollmer's Appeal, 11 P. F. Smith 118, recognised.

February 4th 1873. Before READ, C. J., SHARSWOOD, WILLIAMS and MERCUR, JJ. AGNEW, J., at Nisi Prius.

Appeal from the decree at Nisi Prius: In Equity: No. 5, to January Term 1871.

The proceedings in this case were commenced by bill filed on the 22d of September 1870, by John Mayer against Robert F. Simpson.

The bill averred that the plaintiff, on the 25th of February 1870, became the owner of a lot of ground on the west side of Ninth street, 126 feet north of Arch street, Philadelphia, with old buildings on it, and shortly afterwards removed the buildings preparatory to the erection of a large store on the lot; that the defendant was the owner of a lot at the north-west corner of Ninth and Arch streets, which extended northward on Ninth street to the line of the complainant's lot; that he was erecting a large building of great height, for a museum and theatre, to cover his entire lot, and had nearly completed the northern wall of the building on the plaintiff's southern line, but instead of building a straight wall extending six and one-half inches on plaintiff's ground — the distance allowed for party-walls—he had extended it beyond that distance over plaintiff's ground from a quarter of an inch at one point to four inches and an eighth at another point.

The bill then set out the several points of overlapping, with the different distances at each point.

The bill further averred that after defendant had commenced his building, the plaintiff contracted with Jacob Rush to erect, under the supervision of an architect, on his lot above mentioned a store-house; that the builder and architect had had the entire charge of the plaintiff's property, had erected the front and rear walls of the building, put the roof on, using the adjoining party-walls for his joists; the plaintiff had no knowledge that the defendant had encroached on his property with the party-wall until in August 1870, or he would have taken earlier steps to have prevented this infringement of his rights.

The prayers were :—

[Mayer's Appeal.]

1. For an injunction restraining the defendant from completing the party-wall on the plaintiff's property.

2. That the defendant be restrained from maintaining the party-wall on the plaintiff's land, and that defendant be required to place the wall on a straight line in a perpendicular manner within the limits prescribed by law.

3. For a decree compelling defendant to pay plaintiff damages for the injury done him by erecting the wall beyond the line, and for the delay to plaintiff in the erection of his building caused by the defendant's action; and for general relief.

A preliminary injunction was awarded, which was dissolved September 29th 1870.

Defendant answered,—that he was ignorant of most of the allegations in the bill, and averred that he had made preparation in April 1870 to erect his theatre; that the building was entirely erected and roofed; since filing the bill, a survey of the building inspectors showed an overhanging of but from one-quarter to three-quarters of an inch; that whilst the wall was being constructed and before its completion, the builder of plaintiff's building told the builder of defendant's building that the wall was over the line; defendant's builder immediately offered to correct it, but was informed that it was unnecessary as when plaintiff's joists should be put in it would be all right; the overhanging could then have been corrected with little trouble and expense, and would have been corrected had it not been assented to by the builder; that the plaintiff had made payments on the party-wall, the last after the wall had been entirely erected and the overhanging discovered. Defendant denied the plaintiff's measurements of the overhanging were correct; averred that plaintiff's architect and builder had had entire control of his building, and that the overhanging had been known to them in July 1870, long before the wall was completed; that plaintiff had used the wall for his building.

A replication was filed and an examiner appointed. On his report being filed, George S. Selden, Esq., was appointed master, who reported that the plaintiff was entitled to the relief asked for in his first and second prayers.

The facts, not differing materially from the respective allegations in the bill and answer, are found in sufficient detail in the opinion of Chief Justice READ.

Exceptions were filed by the defendant to the master's report, and after argument at Nisi Prius the bill was dismissed, Judge SHARSWOOD delivering the following opinion, December 30th 1871:—

"I am not inclined to make a decree in this cause, which can be enforced only by compelling the defendant to pull down the party-wall between his house and the house of the plaintiff. Both

buildings rest for their support on this wall.   The plaintiff's builder accepted this party-wall and paid for it.   He has used it to insert his own joists in.   The foundation wall was right, but owing to want of skill, it has encroached several inches in different parts. Had this bill been filed immediately when the plaintiff knew or ought to have known the encroachment, and the defendant had gone on pending the bill, there would be both reason and authority for saying that he could be decreed to pull it down :  Clark *v.* Martin, 13 Wright 289.   But here the wall was nearly finished before the bill was filed.   No doubt a mandatory injunction may be granted on final hearing.   But it certainly is not a matter of right.   I may refer to Senior *v.* Pawson, L. R. 3 Eq. 330, where V. Ch. Sir W. Page Wood considered it a circumstance entitled to great weight 'that damage to a much larger amount would be done by granting the mandatory injunction,' and he adds : 'I do not think I ought to make a decree which would enable an extortionate price to be obtained for the injury sustained by the plaintiff.   Seeing the time which has elapsed before any complaint was made, seeing also that the reasonable mode of doing justice between the parties is by a money compensation, I think that in fairness and in principle the power of the court should be so exercised as to give relief by damages instead of by injunction.'   In England this relief in damages is given by the Court of Chancery ' in addition to or in substitution for ' the specific relief to which the plaintiff may be entitled by virtue of the statute : 21 & 22 Vict. c. 27, commonly called Sir H. Cairns's Act.   The intention of that act ' was to give the court power to grant complete relief whenever it had a well-founded jurisdiction to entertain the case, and not to compel a plaintiff to ask partial relief in one court and then turn him over to another in order to obtain supplemental relief:' Headley *v.* Emery, L. R. 1 Eq. 54.   I have not the statute at hand to examine, but if it goes no further than is here represented, it seems to me that it does not extend the recognised power of the court : Denton *v.* Stewart, cited 1 Ves. p. 329 ; Greenway *v.* Adams, 12 Ves. 395 ; Phillips *v.* Thompson, 1 Johns. Ch. 131 ; Woodcock *v.* Bennett, 1 Cowen 711.   Although these are cases on bills for the specific performance of contracts of sale, I see no reason why the same principle should not apply to other cases, and that whenever a court of equity originally has jurisdiction of the cause of complaint, and for any reason it becomes impracticable to give the relief specifically cited, it may not substitute compensation in damages.   I have felt much inclined to refer this case back to the master to ascertain the damages.   To decree that the wall should be removed, would be to enable the plaintiff to demand an extortionate sum.   The plaintiff's builder, who, as to this matter, must be regarded as his agent duly authorized, having accepted, paid for, and used the wall, it seems to me he has no equity to ask a decree that it should be pulled

[Mayer's Appeal.]

down. I have hesitated as to whether after the wall had been finished or nearly so, the case is not one in which the party should be remitted to his legal remedies. A reference would delay the final decision. On the whole, then, I have come to the conclusion to dismiss the bill."

The defendant appealed to the court in banc and assigned the decree at Nisi Prius for error.

*J. S. Price*, (with whom was *E. K. Price*) for appellant.—The regulation of a lot by the city surveyor is *conclusive*: Godshall *v.* Mariam, 1 Binn. 352; Evans & Watson *v.* Jayne, 11 Harris 34. Plaintiff having made his contract to build with his contractor, both as to the building and the payment of the party-walls, was under no obligation to look further after the building until it was finished: Allen *v.* Willard, 7 P. F. Smith 374.

Simpson had but a statutory right to cross the line which he was bound strictly to pursue: Tilford *v.* Wallace, 3 Watts 141; Bolton *v.* Johns, 5 Barr 149. The authority from Mayer to Rush was to build the building and to pay for legal party-walls on each side, and for nothing more: Co. Lit. 258, *a;* Story on Agency 157, sec. 166: Frailey *v.* Waters, 7 Barr 221.

There is no proof that Mayer had any knowledge of the payments, or in any way acquiesced in the position of the party-walls. He might have looked on in silence, and have remained unprejudiced in his rights: Hepburn *v.* McDowell, 17 S. & R. 383; Alexander *v.* Kerr, 2 Rawle 83; Crest *v.* Jack, 3 Watts 238: Goundie *v.* Northampton Water Co., 7 Barr 233; Knouff *v.* Thompson, 4 Harris 357. Silence will estop only when it is a fraud: Lawrence *v.* Luhr, 15 P. F. Smith 236; Kerr on Injunctions 202.

*G. W. Harkins*, for appellee.—An action at law would give the plaintiff ample compensation, whilst a decree ordering the removal of the wall, would enable him to extort any sum that he might conceive. Where there exists an adequate remedy at law, a court of equity will not interfere by injunction: Kerr on Injunctions 200. The mere diminution of the value of property without irreparable mischief, will not furnish sufficient ground for equitable relief: Atty. General *v.* Nichol, 16 Vesey 342; Winstanley *v.* Lee, 2 Swanston, p. 352.

The opinion of the court was delivered, February 13th 1873, by READ, C. J.—Robert F. Simpson owns a lot of ground at the north-west corner of Arch and Ninth streets, extending in front on Arch street forty-eight feet, and in length or depth on Ninth street one hundred and twenty-six feet, and John Mayer owns a lot adjoining it on the north, eighteen feet on Ninth street by forty-eight feet in depth. The defendant erected in 1870 a building,

intended for a museum and theatre, covering the whole of his lot, the north wall of which was an eighteen-inch brick party-wall, which by law should be six and a half inches on the plaintiff's lot. Mr. Shedaker gave to the defendant, or his agent, the true line between the two properties, in his capacity as Surveyor and Regulator of the Third District, and the stone foundation of the party-wall was correctly laid. The brick wall was carried up, beginning at stone foundation, as would appear by Mr. Shedaker's measurement of the 30th and 31st of August, 1870, three-eighths of an inch over on the plaintiff's lot beyond the limit allowed by law. In extending the wall back on the stone cellar wall, in different parts it overlapped three-quarters of an inch and seven-eighths of an inch, and in the middle of building the wall overhung the lot No. 110 top of first story $2\frac{3}{4}$ inches, at top of second story $3\frac{1}{2}$ inches, and four feet above the floor on the third floor $4\frac{1}{8}$ inches. A subsequent measurement by John F. Wolf, Surveyor and Regulator of the Fifth District, was more unfavorable to the defendant.

Jacob Rush entered into a contract with the plaintiff to erect on his lot, No. 110, a three-story building with a mansard roof, eighteen feet front by forty-six feet deep. It was for a certain price; Rush contracting to pay for all party-walls. Defendant's cellar wall was up before the contract was signed, and the excavation for the building on No. 110 was commenced on the 23d of June 1870. Defendant's wall was carried up ahead of the plaintiff, and Mr. Rush saw the wall was coming over, and notified Mr. John Bingham, who had charge of the work at the time, that the wall was coming over, and that he had better shore it. He did so, but put the shore in the wrong place. Mr. Rush put in the joists in the party-wall, and paid for the party-wall, according to his contract. The plaintiff having heard of its overhanging, employed Mr. Shedaker to make the measurement already stated, and immediately took measures to have this error corrected, which ended in filing this bill in equity on September 22d 1870. The wall is up and both buildings are under roof. The usual five days' injunction was issued and dissolved on the 29th of September. The case was then heard on bill, answer and proofs, and the bill dismissed with costs.

From this decree this appeal is taken. The occupation unlawfully of a portion of the plaintiff's lot does not convey any title to it to the defendant; nor does it affect the plaintiff's title or his right to recover damages for the trespass, but as an injunction is a matter of discretion with a court of equity, we do not feel bound to grant a mandatory injunction to tear down this wall, which is the practical meaning of the second prayer of the bill.

This case shows the necessity of great care and attention on the part of owners and contractors in the erection of party-walls from the time they are commenced until they are finished. The

party erecting, as in this case, will take care it is plumb as it is smooth on his side, and it is his interest to get the full use of his lot, but as was the fact here, more careless as to the encroachment on his neighbor's property. The Building Inspectors should be particularly careful in inspecting party-walls, for their powers are large in correcting all errors in such walls not built in accordance with law.

A full history and discussion of this subject is to be found in Vollmer's Appeal, 11 P. F. Smith 118.

We affirm the degree of the court below with a modification. This bill is dismissed with costs without predjudice.