## Patrick Mackintyre, Appellant, *v.* William D. Jones.

*Equity—Appeals—Findings of fact by the trial judge.*

The findings of the court under the new equity rules, especially if the credibility of witnesses be a factor, will not be set aside on appeal unless there be manifest error.

*Equity—Injunction—Discretion in weighing equities.*

An injunction is not of right even to enforce a strictly legal right; it will not be issued when, upon a broad consideration of the situation of all the parties in interest, good conscience does not require it. The question in each case must depend upon the circumstances out of which it grows and requires the exercise of judgment in determining the equities involved.

A mandatory injunction will not be issued when there has been delay on the part of the plaintiff in invoking the aid of equity until after defendant has expended a considerable sum of money; when the infringement of plaintiff's legal right can be easily compensated by damages; where the comparative inconvenience and loss to defendant from granting the injunction would greatly outweigh the loss and inconvenience to plaintiff if the injunction be denied; and where injury would result from the injunction, if issued, to property of a third party.

Argued Dec. 5, 1898. Appeal, No. 17, Oct. T., 1898, by plaintiff, from decree of C. P. Montgomery Co., March T., 1897, No. 5, dismissing bill in equity. Before RICE, P. J., ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Hearing on bill, answer and proofs. Before WEAND, J.

The bill averred that a forty feet wide street (laid out on a plan of lots by defendant's decedent, but never formally taken for public use by legal proceedings), running between lands of plaintiff and defendant, had been unlawfully filled up from two feet to four feet, by defendant, to the irreparable injury of plaintiff. The prayer was " that the said defendant may be compelled to remove from the said forty feet wide street, all

544 MACKINTYRE *v.* JONES.

Statement of Facts—Opinion of Court below. [9 Pa. Superior Ct.

dirt, stone and other material placed thereon by him, or by his employees, as aforesaid, and, that he may be compelled to restore the said street to the grade at which it was before the said unlawful and wrongful acts of the said defendant."

The answer admitted this allegation, but averred that the natural grade of the street made it practically impassable, that the change was necessary to enable these parties and others to use the street, that appellant knew and consented thereto, and that his property was benefited rather than damaged thereby; furthermore alleging that a verdict formerly recovered by appellant in a proceeding at law was fully compensatory of all damages sustained.

The bill was finally dismissed, WEAND, J., filing the following opinion:

Davis Jones, being the owner of a tract of land in Lower Merion township, Montgomery county, conveyed part thereof consisting of six lots to the plaintiff. These lots fronted on Jefferson street, and extended back as per description in the deeds, "to the northeasterly side of a certain 40 feet wide street, laid out by the said Davis Jones, (said distance being measured from the middle of said Jefferson street as laid out 30 feet wide,) called —— street, (containing in front on said street 75 feet)." The street is now called Price street. At the time of said conveyances and up to 1891, Price street was unopened and impassable for vehicles owing to its slopes and heavy grade. It was overgrown with grass but could be used in a certain manner by plaintiff as a means of access to the rear of his property where he had erected a stable. Davis Jones subsequently died and the defendant is the surviving executor of his last will, etc.

In 1891, defendant at his own expense or at the expense of the estate, in order to make the street fit for public travel and also to improve the property of the estate abutting on the street changed its grade which made the street practicable for travel. By so doing it was necessary to make a fill on the side opposite plaintiff's lots and thus raise the grade at that point, leaving plaintiff's stable two feet below the grade of the street, which it is claimed prevents him from having access to his property by vehicles and also injures his lots by causing the surface water

dirt, etc., from the street to flow upon it. The work was done in 1891 and 1892. The bill which asks for a restoration of the ground to its original condition was filed April 8, 1897.

### FINDINGS OF FACT.

From the testimony we find the following facts:

Davis Jones, plaintiff grantor, dedicated what is known as Price street to public use and at the time of so doing and [up to January, 1891, said street so-called was useless and impassable as a street.] [1]  In front of plaintiff's lots the ground sloped from south to north and the natural grade of Price street, from School street to the ravine at Robinson's lots next below was from seventeen to nineteen feet to the hundred on the southeast side.   It was an irregular grade ; it was not a continuous slope.   [So far as this case is concerned Price street extends from School street, on which also plaintiff's land abuts, to an old public road called Ashland avenue.   As the street is now opened there is a direct communication from School street to Ashland avenue for ordinary travel which was not the case before.] [2]   The property is not in an incorporated town or village but the Jones property was plotted and laid out in lots with designated streets.   To improve the property on the southerly side of Price street, as also the other properties in the neighborhood of School street and Price street and to give the public the advantages of the street for public travel it was necessary to grade Price street by cutting on the southerly side and filling on the other side and this fact and of Jones's intention so to grade was known to plaintiff at the time of his purchase.   [When plaintiff was informed that the work was to be done and of the grade proposed he objected and it was then changed at his request and suggestion.] [3]   The work was commenced in 1891, and finished in 1892.   During this time plaintiff took no legal measure to stop the work, except to consult counsel, but relied upon recovering damages for his injuries and was advised to adopt this course by his counsel.   In March, 1894, he brought suit to recover damages and obtained a verdict and judgment for $76.33, which has been paid him.   [It would appear from the record that this was only intended to cover his damages to date of bringing suit.] [4]   [Plaintiff acquiesced in the necessity for grading and of the doing of the work and after the

grade had been changed, at his request made no further objections except that he wanted damages.] [5]   He brought the present suit April 8, 1897, more than six years after the grading was commenced and his application is to have the street restored to its original condition.   Since the street has been effectually opened two houses have been erected on the southerly side of the street by a person who as far as the evidence shows knew nothing of the contention on the part of plaintiff. [No more water runs on plaintiff's property than before and in fact he suffers less from that source now than before as the water which naturally flowed over his lots from the street, is now conducted into the natural water course on the Robinson lot.] [6]

A proceeding is now pending in the quarter sessions to have Price street declared and laid out as a county road by a jury of view.   If defendant is compelled to restore the ground to its original condition it will entail great expense and loss upon the estate, deprive the estate to a great extent of the use of the lots on the southerly side and do irreparable damage to the owner of the houses since erected.   To properly improve the properties on the southerly side of the street a grade other than the original one is absolutely essential and this is also true if the public is to have any advantage of the street.

At present the plaintiff cannot drive from the street to his stable but this can be remedied by an expenditure of money. The stable is still used for stabling horses.

### CONCLUSIONS OF LAW.

There is no merit in this bill.   The deed to plaintiff mentioned a street to which his lots extended.   The plain and legal meaning of this was not an open lot impassable for travel but a street in the full meaning and sense of the word.   It implied an opening and grading and of this fact plaintiff was perfectly aware.   [His rights on the street are not superior to others and if he is injured it is because he bought a property with full knowledge of the consequences.] [7]   His grant, if extending to the middle of the street, was still subject to the right of his grantor to open the street.   [He could not object to the opening or grading but is confined to damages for an improper method of grading or for any special damage sustained.   Clearly however he is not entitled to have the ground restored or to arbi-

trarily designate a certain grade. This is entirely a question to be decided by a common-law proceeding for damages and it will then be for a jury and the court to decide as to whether he can recover at all. He is moreover barred by his conduct and actions in the matter. One who stands by and sees a public improvement going on which may effect him and by his conduct, words or silence, allows others in ignorance of his objection to spend a large amount of money under the belief that there is no objection, comes into court with bad grace six years afterwards and when other rights have accrued, to have the work undone. In this case plaintiff knew of the necessity of opening the street and that defendant proposed doing it. When he saw and knew that it was being done he contented himself with a complaint as to the extent of the grade proposed and when that was changed at his request he made no further objections but looked for a suit for damages.] [8] [He stood by for over a year while the work was being done, saw expense incurred and afterwards improvements made by the erection of houses in accordance with the new grade and not until six years afterwards did he make any attempt to restrain the work.] [9] [It would be inequitable now, even if the defendant was clearly wrong in the first instance, after expense incurred, improvements made and the public accommodated, to grant the prayer of this bill.] [10] [The loss or injury to plaintiff is insignificant as compared with that which others will sustain and which might have been avoided had he acted promptly and been successful in restraining the work. His loss if any is a pecuniary one which can be compensated in damages and such was evidently his view when he saw the work in progress.] [11] [He is clearly estopped by his silence and acquiescence when he should have spoken for he had knowledge] [12] and "knowledge creates the duty to speak, and where that exists, silence is enough to stop:" Logan v. Gardner, 136 Pa. 588. "Acquiescence in the wrongful conduct of another by which one's rights are invaded, may often operate upon the principles of and in analogy to estoppel, to preclude the injured party from obtaining many distinctively equitable remedies to which he would otherwise be entitled. This form of quasi estoppel does not cut off the party's title, nor his remedy at law; it simply bars his right to equitable relief, and leaves him to his legal actions alone:" 2 Pomeroy's Eq. Jur. sec. 817.

And now, June 3, 1897, this case came to be heard at this term and was argued by counsel, and thereupon, in consideration thereof, it is ordered, adjudged and decreed as follows: That notice shall be given by the prothonotary to the counsel in the cause of the filing of the report and that unless exceptions are filed hereto within fifteen days from such notice that the prothonotary will mark the bill dismissed at the costs of the plaintiff.

Exceptions to the findings and decree of the court were made as above indicated. Plaintiff appealed.

*Errors assigned* were (1–12) in dismissing the plaintiff's exceptions, reciting same. (13) In the court's conclusion of law " there is no merit in this bill." (14) In dismissing bill.

*Edward F. Kane*, for appellant.—When he sold and conveyed the lots according to the plan, and bounded them on the street, he not only conveyed the use of the street as appurtenant to the lots bounded thereon, but he thereby dedicated it to public use: Transue v. Sell, 105 Pa. 604; Opening of Pearl Street, 111 Pa. 565.

It has long been settled that nuisances to rights of way are one of the classes of cases in which the equitable remedy by injunction may be sought. This was established in England: Hacke's Appeal, 101 Pa. 245.

If the matter in dispute between the parties has, during the time when the delay occurred, been the subject of litigation, the plaintiff's delay is sufficiently excused: Comins v. Culver, 35 N. J. Eq. 94; Galloway v. Barr, 12 Ohio, 354; Railroad v. Railroad, 111 U. S. 505.

When the delay has not prejudiced the party pleading laches, it will not be deemed a bar if the suit in equity is not barred by the analogy of the statute of limitations: Fahs v. Taylor, 10 Ohio, 104; Railroad Co. v. Railroad Co., 17 Am. & Eng. R. Cas. 203.

And it would appear that the plaintiff may explain his delay in showing that it was consumed in repeated efforts to obtain a remedy from defendant without litigation: Hoghton v. Hoghton, 15 Beav. 278–314; Thompson v. Marshall, 36 Ala. 504.

Finally, is the appellant entitled to the relief prayed for?

The appellant has discharged every obligation imposed upon him by the law. He attempted to settle before suit was brought. When he could not do this he brought suit to establish his rights. The jury by its verdict found in his favor, thereby establishing his rights. With those rights fixed and determined he now asks the court to enforce them by injunction.

*William F. Solly*, for appellee.—The numerous assignments of error presented by the appellant refer almost entirely to the findings of fact by the learned judge of the court below. The only assignments which allege error of law are the thirteenth and fourteenth.

The findings of the court under the new equity rules are like the findings of a master under the old practice. They will not be set aside on appeal if they appear to have been authorized by the evidence: Com. v. Stevens, 178 Pa. 543; Hancock v. Melloy, 187 Pa. 371.

Applying the law to the facts found by the court below, we invoke the doctrine of equitable estoppel by matter in pais: Hill v. Epley, 31 Pa. 331.

The law of estoppel restrains a party from claiming in opposition to his acts and declarations, when to do so any injury would result to the innocent and blameless which the law could not redress: Woods v. Wilson, 37 Pa. 379; Chapman v. Chapman, 59 Pa. 214; Putnam v. Tyler, 117 Pa. 570, 586; Com. v. Moltz, 10 Pa. 527; Logan v. Gardner, 136 Pa. 588.

OPINION BY RICE, P. J., March 23, 1899:

It would serve no good purpose were we to introduce into this opinion a recital of the facts. They have been clearly stated in the findings of the learned trial judge, and these are fully sustained by evidence. The findings of the court under the new equity rules, especially if the credibility of the witnesses be a factor, will not be set aside on appeal, unless there be manifest error: Com. v. Stevens, 178 Pa. 543; Hancock v. Melloy, 187 Pa. 371. Having examined the evidence, with this rule in view, and having discovered no error which would justify us in setting aside the findings of fact the assignments of error relating thereto may be dismissed without further comment.

Assuming, then, the correctness of the findings of fact, the

question is not whether a court of equity has jurisdiction to compel one owner in common of a way, who, without the consent of his co-owners, has changed the grade, to restore it to its original condition. We assume that when the court obtains jurisdiction upon any equitable ground it may do directly what it may unquestionably do indirectly by a decree prohibiting the continuance of the existing condition. But whilst the jurisdiction of a court of equity to issue a mandatory injunction is now unquestioned, yet it is a power to be exercised with great caution: Kerr on Injunctions, 51; Bispham's Equity, 452; Mayer's Appeal, 73 Pa. 164; Appeal of Frankford Turnpike Co., 11 W. N. C. 184; Orne v. Fridenberg, 143 Pa. 487; Gatzmer v. St. Vincent Society, 147 Pa. 313; Scranton v. Steel Works, 157 Pa. 171; Becker v. Lebanon Railway Co., 188 Pa. 484, and cases there cited. In the exercise of a sound discretion the court will consider, not only the plaintiff's legal right, but also the existence of a remedy at law and its adequacy; the plaintiff's delay in invoking the aid of equity until after the defendant, with his knowledge, has expended a considerable sum of money; his acts and declarations before the work was done or during its progress indicating an intention to rely exclusively upon his remedy at law for the recovery of damages; the easy compensability of his injury in money; and the comparative convenience and inconvenience which the granting or the withholding the injunction would cause the parties. All of these considerations enter into the present case and the additional ones, (1) that to adapt the way to the use for which it was intended a grade other than the original one was absolutely essential; (2) that when the plaintiff was informed that the work was to be done, he objected to the proposed grade and it was then changed at his request and suggestion; (3) that the decree prayed for could not be carried out without affecting injuriously, not only the defendant's property, but also the property of a third person, not a party to this suit, who has built two houses on the southerly side of the street since it was graded. In view of all the circumstances, it is plain to be seen that he is in a very different position in a court of equity from the one he would have held if he had filed his bill before the work was begun. It is not necessary to go to the length of saying, nor do we decide, that he is estopped from claiming damages, or

that they could not have been awarded in this suit if he had framed or amended his bill with that in view, and had furnished evidence by which they might be computed.    See Kerr on Injunctions, *49, and opinion of Judge MᶜPHERSON in Becker v. Lebanon Railway Co.    It is sufficient to say, and this the facts as found by the court below warrant us in saying, that it is impossible to grant the specific relief prayed for without practically rendering the street unfit for public and private use, and doing injury to others greatly disproportionate to any benefit the plaintiff would receive ; that he " acquiesced in the necessity for grading and of the doing of the work," claiming only that he was entitled to compensation for any special injury that might be done to his property; and that such injury can be readily compensated in money damages.    Upon these grounds we sustain the decree.

Considerable stress is laid on the fact that he brought an action of trespass shortly after the work was completed, and it is argued that having established by a verdict his right at law he is now entitled to a decree compelling the defendant to restore the street to its original condition.    That does not necessarily follow, as the authorities above cited show.    Moreover in suing for damages he simply pursued the course that the defendant was led to believe would be pursued, if any legal action was taken.    In Heilman v. Railway Co., 175 Pa. 188, Justice WILLIAMS said : " The expenditures necessary to the completion and equipment of defendant's road have been made. The public has acquired an interest in the maintenance and operation of the completed line.    A chancellor must now consider a widely different question from that which would have been before him if an injunction had been insisted on before the road was completed.    A clear legal right has been invaded in the construction of the defendant's roadway, but whether that road shall now be removed at this point, the operation of the line prevented, and a public inconvenience and loss inflicted, is a question more for equitable, than strictly legal, determination. An injunction is not of right.    It will not be issued when upon a broad consideration of the situation of all the parties in interest, good conscience does not require it."    Many of the equitable considerations—amongst them may be mentioned the public interest—which moved the court in that case to refuse to grant

the extraordinary relief prayed for, exist in the present case. It is also to be particularly noticed, that in refusing to compel the defendant to restore the highway to its original condition, the court conceded that the plaintiff's clear, legal right had been invaded. So after a reargument of the case the same learned judge said: " Equity does not enforce a strictly legal right, regardless of consequences. It is said, that an injunction is of grace. This does not mean that a chancellor may grant or refuse an injunction as he pleases, but that his action is controlled by considerations of conscience. He does that, which in good conscience he ought to do. The question in each case must depend upon the circumstances out of which it grows, and requires the exercise of judgment, in determining the equities involved: " Heilman v. Railway Co., 180 Pa. 627. Again in Becker v. Lebanon Railway Co., 188 Pa. 484, the same equitable principle was enforced, in a case where the plaintiff had filed a bill in equity, before that part of the highway in front of his premises had been entered upon by the defendant company, but had not moved for a special injunction, nor taken steps to bring the cause to an issue and hearing, until after the road was built, and in full operation. The plaintiff planted himself on his legal right, and Justice MITCHELL who rendered the opinion of the court, conceded, that "if he were in a court of law, his position would be incontestable," but after referring to his delay in prosecuting the suit, the change of conditions during this delay, the disproportion of the benefit to the plaintiff to the injury to the respondent, and the public which would result, if an injunction mandatory and destructive in its character were granted, and to the general principles which ought to guide a chancellor in such a case, he concluded as follows: " In view of the learned judge's findings in the present case, on the loss to the defendant, the inconvenience to the public, the smallness of the injury to the complainant, and its easy compensability in money, he could scarcely have reached any other conclusion, than that complainant, however clear his right, should be left to his remedy in damages." Many other cases might be cited to show, that the court below kept well within equitable principles in holding that the plaintiff was not entitled to the specific relief prayed for, but it is unnecessary. This is a proper case for the application of the familiar principle that "Nothing

can call forth a court of equity into activity but conscience, good faith and reasonable diligence."

The decree is affirmed and the appeal is dismissed at the costs of the appellant.