## S. Fell Jones and William Jones, Appellants, *v.* Pittsburg, McKeesport & Youghiogheny Railroad Company.

*Railroads—Improvements under act of 1869—Grant of easement—Eminent domain.*

A grant to a railroad company of a right of way and easement, for a consideration in money and certain covenants "not to interfere with a roadway leading to a sawmill," etc., is not to be construed as binding the railroad company never to exercise its right of eminent domain, under the Act of March 17, 1869, P. L. 12.

The right of a railroad company to make the necessary improvements contemplated by the act of 1869 was intended in large measure to be exercised for the public good and it will not be presumed, in the absence of clear words, that a company intended to barter away that right and thus disable itself wholly or in part to perform the public functions which it has undertaken.

Argued April 19, 1899. Appeal, No. 104, April T., 1899, by plaintiffs, from order of C. P. Fayette Co., in equity, No. 292, dismissing bill for injunction. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by RICE, P. J. W. W. PORTER, J., dissents.

Bill in equity. Before MESTREZAT, P. J.

It appears from the record that on January 26, 1892, the plaintiffs, with their wives, conveyed to the defendant company

the easement and right of way for the construction and maintenance and use of a railroad, forty feet in width at the grade of the roadbed ; that in said conveyance it is " agreed that said second party shall not by its fill or embankment obstruct the flow of water in Speer's run, nor in any way interfere with the roadway leading to said sawmill tract now in use adjoining Speer's run."

The defendant company having so filed its bond, expressed its intention to interfere with said roadway as it was in use on January 26, 1892, in violation of the agreement expressed in the deed, and in violation of the injunction granted by the court against defendant's lessee.

The defendant proposes to lower said roadway seventeen inches, and plaintiffs allege that if said roadway is lowered as defendant proposes that the plaintiffs would be greatly injured thereby and their business interfered with to such an extent that it would be impossible to arrive at an adequate compensation in damages.

The defendant company only proposed to appropriate about fifteen inches vertically of the headroom or clearance of said roadway ; that such appropriation, being under and by virtue of the defendant's charter rights, would not be in violation of the terms of the agreement as set forth in said deed of January 26, 1892 ; that the agreement in said deed, not to interfere with said roadway, was merely a declaration by the defendant company that they came short of obtaining an absolute easement to the extent only that they could not, by virtue of their rights under said deed, close up said road ; that it was not an agreement that they would not at any other time in the manner provided by law appropriate and pay for the said right of way.

The court below filed the following opinion and order:

This matter was presented, heard and considered upon bill with accompanying affidavits, the answer and argument of counsel.

The only reason urged by the plaintiffs in support of their prayer for this injunction is that the defendant company, having entered upon and constructed their road over the plaintiffs' premises under the agreement of January 26, 1892, said company has no right to claim or acquire any other rights over

plaintiffs' premises by condemnation proceedings. We do not agree with the · plaintiffs' position, but are of opinion that, within the right of way given it by its charter, said company can proceed and procure under the right of eminent domain such other rights of way over and beyond those obtained by said agreement as may be necessary for the construction and operation of its road.

But we do not think that the defendant company has a right to enter upon plaintiffs' premises outside of their established right of way, and hence we will grant an injunction restraining the defendant company from doing so.

### ORDER.

And now, December 14, 1898, this matter having been heard upon the bill, with accompanying affidavits and answer, and having been argued by counsel, a preliminary injunction is granted restraining the defendant company, its employees and workmen, from entering upon or otherwise interfering with the plaintiffs' road outside of and beyond the right of way of said defendant company over and across said road; and with this exception the preliminary injunction prayed for in the plaintiffs' bill is refused. Bond to be given by the plaintiffs in the sum of $1,000, with approved security.

Plaintiffs appealed.

*Error assigned* was to the order of the court, reciting same.

*S. E. Ewing,* for appellants.—In a case like the present one we do not think it necessary that the injury should even be irreparable as defined.

When the construction of a contract is clear and the breach clear, it is not a question of damage, but the mere circumstance of the breach of contract affords sufficient ground for the court to interfere by injunction: 1 Joyce on Injunctions, 503–554; 2 Joyce on Injunctions, 852–1035.

A suit at law would afford no adequate remedy and the damages will be continuing and accruing from day to day; and furthermore the object of the contract can only be obtained by the parties conforming expressly and exactly to its terms: McClurg's Appeal, 58 Pa. 51.

A railway company which had bought land from a man, and had covenanted with him in the purchase deed not to erect any building upon it to a greater height than eighteen feet within the distance of eighty feet from certain other property of his, was restrained according to the terms of the covenant: Kerr's Law and Prac. of Injunctions (3d ed.), 442, 484; Lloyd v. Railway Co., 2 D. J. & S. 568.

It seems to be the practice of the courts to make such corporations comply with the terms of their agreements. In this case there is no reason why this practice should not be continued. The defendant company can carry out its plan of improvement without necessitating any change in the plaintiffs' roadway.

*George D. Howell*, for appellee.—Because the railroad company in 1892 agreed that at that time they would ask no right to interfere with the roadway of Jones, cannot be urged now as an abandonment of their right to appropriate it at another time if needed: R. R. v. Speer, 56 Pa. 325.

In P. W. & B. R. R. v. Williams, 54 Pa. 103, it is held that the charter giving power to take land, gives power to take a right of way over it, under the maxim "Omne majus continet in se minus," and the owner may have a view to assess damages, and the remedy is not by action denying the right of entry, but by assessment of damages by viewers.

In Philips v. St. Clair I. P. Co., 153 Pa. 230, it was held that the owner of a private right of way over land is entitled to have damages assessed as an owner of the land, and cannot maintain a common-law action when a statutory action has been provided.

After filing and approval of bond, the owner's only remedy is on the bond: Seller's App., 118 Pa. 512.

OPINION BY RICE, P. J., July 28, 1899:

Prior to the date of the deed to which we shall refer hereafter, the defendants' railroad crossed the plaintiffs' private road and Speer's run at right angles by a wooden bridge elevated about eight feet above the bed of the road. In June, 1898, the company, or its lessee, the P. & L. E. R. R. Co., replaced this with a temporary structure preparatory to the erection of an

iron bridge or viaduct, which, by reason of the vertical thickness of the girder, would reduce the headroom or clearance above the bed of the plaintiffs' road about fifteen inches. To make up for this, the company proposed to lower the bed of the plaintiffs' road, and had begun the work of excavation when the plaintiffs filed a bill against the P. & L. E. R. R. Co., and obtained an injunction. Thereupon the defendant company, in the exercise of its right of eminent domain, presented to the court of common pleas its bond conditioned to indemnify the plaintiffs for any damages they might sustain by reason of the company's interfering with their roadway in the manner proposed and prayed for its approval. The bond was approved, and the plaintiffs then filed a bill against the present defendant, and moved for an injunction. After hearing, the motion was denied in part, and from this order the plaintiffs took the present appeal.

It is to be noticed, that the railroad company began its work in June and the first bill in equity was not filed until October. In the mean time the original structure had been removed and a temporary structure put in its place, expensive mason work to support the new iron bridge had been built, and the materials for its construction had been prepared, and were upon the ground, or were ready for shipment. It was also stated on the argument, that since the approval of the bond the iron spans have been put in place.

The jurisdiction of a court of equity to enforce a negative covenant—that is a covenant that a thing shall not be done—is as undoubted as its jurisdiction to enforce specific performance of an affirmative agreement. The court will look at the substance rather than at the form of the agreement: Clark v. Martin, 49 Pa. 289; Landell v. Hamilton, 175 Pa. 327. But whether the court will exercise that jurisdiction depends on the circumstances of each case. If the covenant be unconscionable a court of equity will not enforce specific performance. The same is true if it is against public policy. So also, if its breach will work no appreciable harm to the covenantee, and its enforcement would work great injury to the covenantor, or if there has been acquiescence or laches on the part of the covenantee inducing belief on the part of the covenantor that it would not be insisted on, and acting on that belief he has made considerable expenditures, and the plaintiff could be readily compen-

sated, in money damages, the court will not interfere by injunction. If it became necessary, it would be worthy of inquiry, whether, in view of the delay and the changed conditions, any decree ought to be made before final hearing which would compel the removal of the structure. See Mackintyre v Jones, 9 Pa. Superior Ct. 543, and the cases there cited, 2 High on Inj. 1159, and Orne v. Fridenburg, 143 Pa. 487. We, however, do not put our decision on the ground that the plaintiffs were guilty of laches, nor upon the ground of the great disproportion between the injury to the defendant and the public and the benefit to the plaintiffs that would ensue if the injunction were granted, but upon the broader and more stable ground that the plaintiffs' legal right is not clear. ·

The Act of March 17, 1869, P. L. 12, provides that it shall be lawful for any railroad company now or hereafter incorporated "to straighten, widen, deepen, enlarge and otherwise improve . . . . the bridges, crossings, . . . . aqueducts, piers and structures thereof, . . . . for better securing the safety of persons and property and increasing the facilities and capacity for the transportation of traffic thereon, and for such purposes . . . . to enter upon . . . . take and appropriate land and material, . . . . on making compensation or tendering security." So far as the erection of the structure itself is concerned, and the consequent diminution of the headroom or clearance above the plaintiffs' road, the company is proceeding strictly within its charter powers and no such abuse of them is alleged as would justify the interference of a court of equity and the substitution of its discretion for that of the company. The plaintiffs' contention is that any change in the structure which will materially diminish the headroom or clearance above their road is a violation of an express agreement.

By their deed poll dated January 26, 1892, the plaintiffs granted to the defendant, for the consideration of $700, the easement and right of way for the construction, maintenance and use of a railroad of two or more tracks, with appurtenances, forty feet in width, at the grade of the roadbed of the railroad, with all such additional widths as should be necessary for the slopes of the cuts, fills, ditches and appurtenances. The deed contained this clause in the granting part: "and it is also agreed that the said second party shall not by its fill or embank-

ment obstruct the flow of water in Speer's run, nor in any way interfere with the roadway leading to said sawmill tract now in use adjoining Speer's run." The success of the plaintiffs' claim to have equitable relief depends upon the adoption of their construction of the foregoing clause, and the validity of the contract as thus construed. They claim, in effect, that it is a covenant binding the railroad company never to exercise its right of eminent domain in such a way as to interfere with their private road. The defendants' counsel argue, that the clause was intended simply to define the railroad company's rights under that deed. This, it seems to us, is the more natural and obvious construction of the clause. The height of the overhead structure above the roadbed was fixed by the grant. It was to be at the grade of the railroad bed. There was no necessity for further defining of that; hence an interference with the use of the road by lowering the structure was not mentioned. But certain undefined rights as to fills and embankments were granted, and it was especially to restrict the company in the exercise of these that it was stipulated that the road should not be interfered with. The right of a railroad company to make the necessary improvements contemplated by the act of 1869 was intended in large measure to be exercised for the public good and it will not be presumed in the absence of clear words that the company intended to barter away that right and thus disable itself wholly or in part to perform those public functions it has undertaken. There is certainly no such clear intention manifest in the instrument under consideration.

The decree is affirmed and the appeal dismissed at the cost of the appellants.

WILLIAM W. PORTER, J., dissents.