# Liggett *v*. Kaufmann.

*Equity—Equity practice—Finding of fact—Exception—Assignments of error—Appeal.*

In an equity case where none of the findings of fact are excepted to in the court below, or are specifically assigned for error in the appellate court, the latter court will assume their correctness.

*Equity—Equity jurisdiction—Mandatory injunction.*

Whilst the jurisdiction of a court of equity to issue a mandatory injunction is unquestioned, yet it is a power to be exercised with caution. In the exercise of a sound discretion the court will consider, not only the plaintiff's legal right, but also the existence of a remedy at law and its adequacy; the plaintiff's delay in invoking the aid of equity until after the defendant in good faith has expended a considerable sum of money; the easy compensability of his injury in money; and the comparative convenience and inconvenience which the granting or the withholding of the injunction would cause the parties.

Where an owner of land leases it for a term of nineteen years to the owner of a department store, and the lease contains a covenant by the lessee to build on the land a seven-story building, which at the end of the term was to be turned over to the lessor in good order and condition, and the lessee or his agent knows that the building is to be used as part of the department store, and the building is erected on the land, and subsequently the lessee acquires the adjoining lot and constructs a building thereon with the knowledge of the lessor and makes openings in the solid wall previously constructed, and it appears that these openings do not impair the strength of the wall and can be closed at a cost of from $65.00 to $70.00, and that the property purchased by the lessee could not be used except in connection with the buildings on the lessor's property by the means of the opening, the lessor will not be granted a mandatory injunction to compel the lessee to close up the opening.

Argued May 11, 1901. Appeal, No. 127, April T., 1901, by plaintiff, from decree of C. P. No. 2, Allegheny Co., April T., 1900, No. 143, on bill in equity in case of John Liggett *v*. Jacob Kaufmann, Isaack Kaufmann, Morris Kaufmann and Henry Kaufmann, partners, and trading as Kaufmann Brothers. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Bill in equity for an injunction.

SHAFER, J., found the facts to be as follows:

The bill is by a landlord against a tenant, to restrain waste.

## FINDINGS OF FACT.

1. The defendants are the owners of a large department store on Smithfield street, in the city of Pittsburg, the buildings occupied by them being erected upon lots in part leased from various owners and in part owned by the defendants themselves in fee, having been built from time to time as the properties were acquired, and all used and intended to be used, as one store.

2. In November, 1897, the plaintiff was, and still is, the owner of a lot of ground at the corner of Smithfield and Diamond streets, adjoining properties then used by the defendants for their business ; and on November 20, 1897, the plaintiff made a lease to the defendants of his said lot, of which lease " Exhibit A," attached to the plaintiff's bill, is a correct copy. The lease was for the term of nineteen years, and a part of the consideration for it was that the defendants should immediately build on the plaintiff's land, " to the height of and including seven stories complete, a building, the plans and specifications of which are for a seven-story building ; and to be of a character and construction as provided for in said plans and specifications for said completed building." This lease also contains a covenant by the defendants that, at the termination of the lease, the building shall be turned over and delivered up to the plaintiff " in good and sound order and condition and complete repair."

3. At the time negotiations were carried on for the making of this lease, and at the time the lease was made, the plaintiff knew the purpose for which the defendants intended to use the building, and further knew that the defendants were endeavoring to obtain possession, by lease or purchase, of the property known as the Deckenbaugh property, fronting on Diamond street, immediately in the rear of plaintiff's lot, to be used for the same purpose. The negotiations for this lease, and all the transactions of the plaintiff with the defendants, were carried on by the son of the plaintiff, Frank R. Liggett, who appears to have been the agent of his father in the management of the property.

4. In pursuance of the terms of the lease of the plaintiff to the defendants, the defendants entered upon the plaintiff's lot

and built a seven-story building. The wall next to the Deck-enbaugh property, being the wall which runs at right angles with Diamond street, was built solid throughout its whole length and height. Whether it was so built because the specifications required it to be built in that manner or not does not appear, as the specifications themselves are not in evidence.

5. After the completion of this building the defendants purchased the above mentioned Deckenbaugh property on Diamond street, and in July, 1899, began to erect a building thereon. This building was constructed without any door or opening upon Diamond street, and that it was so constructed became plainly visible to any person passing along the street within a short time after the construction was begun, and was, in fact, known to Frank R. Liggett, the plaintiff's agent. The only means of access to the building on the Deckenbaugh property thus in course of erection, unless the openings complained of were made, would have been in the rear, 120 feet from Diamond street, where some sort of passageway existed from the Methodist church property, which formed part of the Kaufmann store. Prior to beginning the construction of the building on the Deckenbaugh property there had been various conversations between Mr. Frank R. Liggett and the defendants, in which the defendants always claimed that they had a right to make openings through the wall, and Mr. Liggett claimed they had not.

6. On November 11, 1899, by which time the building was in a fair state of progress, the work having been carried on without intermission from about July 1 to that time, the plaintiff, by his agent, Frank R. Liggett, sent to the defendants a notice, "Exhibit B," attached to the bill, in which he informs defendants that he has heard that they are about to make openings in the wall, and forbids any changes or alterations in the wall, and gives notice that he will take proceedings to have the same restrained by the courts. Immediately after this notice the parties had a conversation over the telephone, about which they radically differ, Mr. Liggett claiming that the defendants' agent said to him that they were about to make openings, and would not do so; whereas Mr. Baer, the agent of the defendants, says that the conversation was about a particular opening in the cellar wall which Liggett had seen the day before, and that he said

to him over the telephone that they would not enlarge that opening, but that the plaintiff knew their position in regard to the right to make openings through the wall, and that they would adhere to it.  It does not appear to be necessary to the determination of the case to find which of the parties is right in this contention ; but it does not seem very probable that the defendants, after having proceeded so far in the erection of the building for which the openings were necessary, should then abandon a claim which they confessedly made at all times before.

7.  The construction of the building was proceeded with after November 11, 1899, and on January 17, 1900, the plaintiff, by his attorney, gave notice to defendants that he was informed that they were taking out, or had taken out, a considerable section of the wall referred to, and that he would proceed to restrain them, and would require a replacement of the portion of the wall taken out; and within a few days thereafter the bill was filed.  At the time of the giving of the last mentioned notice the openings complained of had been made and completed, except the finishing and framing of the openings.

8.  The openings complained of do not in any way impair the strength of the building on the plaintiff's lot, or in any way endanger it, and do no actual harm in any way to the plaintiff.  They are five in number, and can be closed up at any time at a cost of from $65.00 to $70.00, so as to leave the wall in every respect as complete as before they were made.  The defendants have expended a large sum of money in the erection of their building on the Deckenbaugh property, which could not be used except in connection with the building on the plaintiff's property by means of these openings.

We are not convinced that the granting of an injunction herein requiring the closing of the openings complained of would produce an equitable result.  The case is not that of a building already erected by an owner and demised by him; nor is it a case in which there is any negative covenant to enforce. No irreparable injury can be done to the plaintiff, nor, for that matter, any real substantial injury whatever.  The waste complained of cannot be said to have been committed secretly, and was practically ended before the bill was filed.

In view of all the circumstances of the case, we are of opin-

ion that it is not one for an injunction, but is one in which the parties may be properly left to their legal remedy.

The defendants have offered either to give a bond with sureties to restore the openings before the expiration or sooner determination of the lease, or place in the hands of the plaintiff $350 to secure the proper closing up of the openings. If the plaintiff is willing to accept either of these offers a decree will be made accordingly; but if not a decree will be made dismissing the bill, the costs to be paid, one half by each of the parties.

The defendants' offer was refused and the court subsequently dismissed the bill.

*Error assigned* was the decree of the court dismissing the bill.

*M. A. Woodward*, for appellant.—The court had jurisdiction, with power to enjoin and enforce a restoration of the property, as far as possible, to its former condition.

A court of equity in exercising its jurisdiction by way of mandatory injunction against acts violating a contract, covenant or agreement, looks to the obligation of the parties under their contract, and is not, as in cases of trespass, or a nuisance, influenced by consideration as to the nature or extent of the damage: Storer v. Great Western Ry. Co., 2 Y. & C. 48; Lloyd v. London, Chatham & Dover Ry. Co., 2 De G. J. & S. 579; Kerr on Injunctions, 482.

Contracts for erection of buildings may be enforced according to their terms by a court of equity, and where the contract contemplated permanent maintenance of the building by the defendants having it in use, the terms of the agreement will be enforced and full compliance on the part of the defendants decreed: Wilson v. Furness Ry. Co., L. R. 9 Eq. 28; Hood v. Northeastern Ry. Co., L. R. 8 Eq. 666; Price v. Corporation of Penzance, 4 Hare, 506.

*W. B. Rodgers*, for appellee.—The plaintiff stands upon a bare legal right. But that is not enough in equity: Orne v. Fridenberg, 143 Pa. 500; Atkins v. Chilson, 7 Metc. 398.; Bispham's Equity, sec. 434; Mackintyre v. Jones, 9 Pa. Superior

Ct. 550; Becker v. Lebanon, etc., Ry. Co., 188 Pa. 484; Doherty v. Allman, L. R. 3 App. Cases, 709.

There is no negative covenant not to make openings, and so long as the walls are not weakened, we have the right, in view of the long period of this lease, to make reasonable changes necessary for our business, and not involving the integrity, strength and uses of the building to be erected: Winship v. Pitts, 3 Paige, 259.

The law in relation to injunctions for waste is that the court will only interfere to prevent future waste, except in cases where the complainant has no remedy at law, or a discovery is necessary, or when there is some other ground for equitable interference: Winship v. Pitts, 3 Paige, 259.

OPINION BY RICE, P. J., July 25, 1901:

As none of the findings of facts were excepted to in the court below or are specifically assigned for error in this court, we must assume their correctness. See Equity Rules 63 to 67 inclusive. The court finds that at the time of the giving of the notice of November 11, 1899, the construction of the defendant's building was in a fair state of progress,—having been carried on without intermission from about July 1,—and that at the time of the giving of the notice of January 17, 1900, the openings complained of had been made and substantially completed. At that time the plaintiff's injury, so far as the past or prospective action of the defendants could cause him injury, was complete. The manifest purpose of the plaintiff's bill, which was not filed until May, 1900, was, directly or indirectly, to compel the closing up of the openings and the restoration of the wall to its former condition. It is fair to treat it as a bill for a mandatory injunction, and if so, to attach significance to the eighth finding of fact which is as follows: "The openings complained of do not in any way impair the strength of the building on the plaintiff's lot, or in any way endanger it, and do no actual harm in any way to the plaintiff. They are five in number, and can be closed up at any time at a cost of from $65.00 to $70.00, so as to leave the wall in every respect as complete as before they were made. The defendants have expended a large sum of money in the erection of their building on the Deckenbaugh property,

which could not be used except in connection with the building on the plaintiff's property by means of these openings."

Whilst the jurisdiction of a court of equity to issue a mandatory injunction is now unquestioned, yet it is a power to be exercised with caution. In the exercise of a sound discretion the court will consider, not only the plaintiff's legal right, but also the existence of a remedy at law and its adequacy; the plaintiff's delay in invoking the aid of equity until after the defendant in good faith has expended a considerable sum of money; the easy compensability of his injury in money; and the comparative convenience and inconvenience which the granting or the withholding the injunction would cause the parties. This is the doctrine of many Pennsylvania cases some of which are collected in Mackintyre v. Jones, 9 Pa. Superior Ct. 543. In determining as to the adequacy of the remedy the court will take into consideration the solvency of the defendant, if that fact be established, and will inquire whether the damages must be sought in successive suits or can be obtained once for all. Doherty v. Allman, L. R. 3 App. Cases, 709 is an instructive and pertinent case.

It may be conceded that where a lessee has proceeded secretly and surreptitiously in violation of an express or clearly implied negative covenant the inconvenience to him of being compelled to restore the status quo is not a circumstance that will be accorded as great weight as where he has proceeded openly and in a bona fide assertion of a legal right. But the allegation of secrecy in the construction of the openings was denied in the answer and is not sustained by the court. On the contrary the facts found by the court are entirely inconsistent with the allegation. We think therefore that the court did not err in discretion in applying the foregoing equitable principles to the case and in concluding that it was not one for an injunction but was one in which the plaintiff might be properly left to his legal remedy. In view of the special circumstances set forth in the findings of facts we think this conclusion was correct whether the action of the defendants be regarded as a technical waste or as the technical violation of an implied negative covenant.

The decree is affirmed and the appeal dismissed at the costs of the plaintiff.