# Asbury v. Carroll, Appellant.

*Equity—Injunction—Mandatory injunction—Building restriction— Garage.*

1. A mandatory injunction will not be granted unless the plaintiff's right is clear. The court, in determining whether such an injunction should issue, will consider, in the exercise of its sound discretion, not only the plaintiff's legal right, but also the existence of a remedy at law,

and its adequacy; the plaintiff's delay in invoking the aid of equity until after the defendant, with his knowledge, has expended a considerable sum of money; the easy compensability of his injury in money, and the comparative convenience and inconvenience which the granting or the withholding the injunction would cause the parties.

2. A grantor in a deed has no right to a mandatory injunction to compel the removal of a small garage constructed by the grantee on the southeast corner of his lot, merely because the deed dated in 1893 contained a provision that a stable if erected should be placed on the northwest corner of the lot. A garage is not a stable within the meaning of such a building restriction.

3. On a bill in equity for such a mandatory injunction, it is error for the trial judge to refuse the defendant's offer to prove by qualified witnesses that the construction of a small garage on suburban property worked no injury to the surrounding properties.

4. It is also error in such a case to refuse the defendant's offer to prove that in a number, at least, of properties adjoining the one in question, and in its immediate vicinity, which had been sold by the same grantor, no like restrictions were imposed.

5. Where in such a case the defendant offers to prove by expert builders that a garage was not an "appendage" within the meaning of the latter word in the deed, and the trial court in response to an objection rules that a garage was not an appendage, and the plaintiff then abandons his offer, the appellate court, in the absence of the evidence offered by the defendant will not determine that a garage is an appendage.

6. A building restriction in a deed is in derogation of the ordinary rights that accompany the acquisition of real property, and being the language of the grantor, will be most strongly construed against him.

Argued Dec. 17, 1912.    Appeal, No. 272, Oct. T., 1912, by defendant, from decree of C. P. No. 2, Phila. Co., Dec. T., 1911, No. 1,245, on bill in equity in case of Mary E. Asbury et al., Trustees under the will of T. Henry Asbury, deceased, and Charles W. Asbury v. William G. Carroll.    Before HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.    Reversed.

Bill in equity to compel the removal of a garage.

At the trial it appeared that on March 20, 1893, T. Henry Asbury granted and conveyed to William G. Carroll two lots of ground.    The deed contained the following restrictions:

"That no carpenter, blacksmith, currier or machine shop, livery stable, piggery, slaughter house, or factory of any kind, nor any building for the sale of malt or spirituous liquors, or for any offensive occupation or use, shall at any time be erected on said lot of ground.

"And, also, that no more than one mansion or dwelling house, with the necessary appendages, shall be erected, and shall set back at least fifty feet from the middle line of said Lakeside Avenue. Said building to be constructed of stone to the second floor, and shall cost not less than $5,000. And, further, that the stable, if one should be erected, shall be placed on the northwest corner of said lot of ground and shall not cost less than $800.

"That all cesspools, waterclosets or privy wells erected or sunk thereon shall not be nearer than twenty feet to the line of the adjoining lot, and no drains or sewer for refuse or cesspool water shall be discharged on any adjoining lot or into or upon the said Lakeside Avenue."

Shortly thereafter, the defendant built a dwelling house on the lot, but no stable. The lot purchased by him was one of a number of lots or parcels of ground which, in the year 1889, T. Henry Asbury had plotted and marked out on a plan referred to in the deeds, in order to sell the same for the exclusive purpose of erecting suburban dwellings thereon, lots being located near to Oak Lane and Melrose Stations on the North Pennsylvania Railroad, a suburban section lying partly in the city of Philadelphia and partly in Montgomery county.

On or about August 23, 1911, Carroll commenced the erection of a garage for the purpose of storing therein an electric motor car. The building was finished on September 18, 1911. The bill was filed on October 5, 1911.

The court entered the following decree:

And now, October 18, 1912, this cause having been heard by the court upon bill, answer and proofs and

argument of counsel, upon consideration it is ordered, adjudged and decreed, as follows:

1. That the erection by defendant of the building for storage therein of an electric motor car, on the southeast corner of his lot of ground consisting of two parcels of land conveyed to him by T. Henry Asbury, by deed dated May 20, 1893, and deed dated October 30, 1893, constituted a violation of the restrictions of the covenants of said deeds.

2. That defendant remove or cause to be removed the said building within thirty days from the date of this decree.

3. That a writ of injunction issue commanding and directing the defendant to remove or cause to be removed said building within thirty days from the date of this decree.

4. That defendant pay the costs of this proceeding.

*Abraham M. Beitler*, with him *George S. Munson*, for appellant.—A garage is not a stable: Saylor v. Com., 57 S. W. Repr. 614; State v. Jeter, 24 S. E. Repr. 889.

The conclusion is irresistible that in 1893 the parties were not providing for the erection of a garage as a "necessary appendage" to the dwelling house. It is equally clear that there is no restriction imposed by the deed on the erection of any other building on the lot not offending against the first section of the restriction. If, however, the language of the restriction can be stretched to cover the building just erected, a chancellor will not under the circumstances of this case grant the relief prayed for; which is an order for the demolition of the building: Orne v. Fridenburg, 143 Pa. 487; Mackintyre v. Jones, 9 Pa. Superior Ct. 543; Becker v. Ry. Co., 188 Pa. 484; Liggett v. Kaufmann, 17 Pa. Superior Ct. 631; Good v. Fire Brick Co., 224 Pa. 496.

*F. B. Bracken*, for appellees.—The garage was an appendage: Smith v. State, 22 Ala. 54; Barclay's App.,

13 Pa. 495; Beckwith v. Pirung, 134 N. Y. App. Div. 608.

The garage was a stable: Tranton Diocese v. Toman, 74 N. J. Eq. 702 (70 Atl. Repr. 606); Chase v. Walker, 167 Mass. 293.

OPINION BY HEAD, J., July 16, 1913:

The plaintiffs filed a bill praying for an injunctive decree, mandatory in its nature, requiring the defendant to take down and remove a small stone building which he had erected on his property to be used as a private garage for the storage of an electric automobile. The learned trial judge directed that such a decree be entered and his action was afterwards affirmed by a divided court in banc. A dissenting opinion was filed by Judge BARRATT. From that decree this appeal was taken.

The considerations which should move a chancellor to grant or refuse a mandatory injunction have been frequently stated. In Wakeling v. Cocker, 208 Pa. 651, the Supreme Court used the following language: "It will be noticed that the bill prays for a restitution of the wall. It requires a much stronger case to move a chancellor to put forth his strong arm to compel a positive act on the part of a defendant, than to restrain him from committing a wrongful one. Had plaintiff asked the court to restrain the contractor from taking down the wall, it may be that it would have been moved to do so; but plaintiff asks the court to order him to build it up again as it stood at first. To this the court answers by its finding of facts, 'no serious injury has been done you, and for whatever injury you have suffered you have your suit for damages.' This is one of the very cases where equity will decline to take jurisdiction;" etc. In Mackintyre v. Jones, 9 Pa. Superior Ct. 543, President Judge RICE thus reviewed the principle: "But whilst the jurisdiction of a court of equity to issue a mandatory injunction is now unquestioned, yet it is a power to be exercised with great caution. (Many cases cited.) In the exercise of a sound discretion the court

will consider, not only the plaintiff's legal right, but also the existence of a remedy at law and its adequacy; the plaintiff's delay in invoking the aid of equity until after the defendant, with his knowledge, has expended a considerable sum of money; . . . . the easy compensability of his injury in money; and the comparative convenience and inconvenience which the granting or the withholding the injunction would cause the parties." The same doctrine is again declared in Liggett v. Kaufmann, 17 Pa. Superior Ct. 631.

It has often been said that the decree of a chancellor is of grace, not of right. This does not, of course, mean that a decree is to be granted or withheld merely at the whim or caprice of the chancellor. Where the right of the plaintiff seeking such decree is clear, a refusal to grant the relief sought would be such an arbitrary and capricious act as would promptly call for a reversal at the hands of an appellate court. But if it ever be true to say that, where the plaintiff's right is doubtful, a decree should be denied, it must be conspicuously true where a mandatory injunction is prayed for.

It is not alleged that the building, the destruction of which would be the result of the decree entered, encroaches in any sense on the property of the plaintiffs. It is not averred nor proven that either the structure itself or the use for which it is designed exhibits any element of a public or private nuisance. The sole ground on which the right to a decree is based is that the construction of the building complained of is a violation of a building restriction contained in the deed under which the defendant took title to his property. Again it is to be observed that such restrictions are in derogation of the ordinary rights that accompany the acquisition of real property. The language of such restriction is the language of the grantor and to be most strongly construed against him.

In 1893 the defendant purchased the property now owned by him from the plaintiffs' testator by a deed in fee simple which contained a building restriction from which

we quote the portion here material, viz.: "And also that no more than one mansion or dwelling-house with the necessary appendages shall be erected and shall set back at least fifty feet from the middle line of said Lakeside avenue. Said building to be constructed of stone to the second floor and shall cost not less than $5,000.00. And further that the stable, if one should be erected, shall be placed on the northwest corner of said lot of ground and shall cost not less than $800.00." Some years ago the defendant, as we understand it, erected a dwelling house on this property in conformity with the restriction quoted and has since that time resided there. Shortly before the filing of this bill he began the construction, on the southeast corner of his lot, and on the street line, of a small building of stone and cement, not unattractive in appearance, to be used, as the testimony shows, merely for the storage of an electric coupé owned by his wife. The contract for the building was let on or about August 23, 1911, and excavation was promptly begun. The stonework was begun on September 6 and by September 18 was finished and the building roofed. There remained the painting and some inside finishing to complete the structure. On the date last named the plaintiffs caused a written notice to be served on the defendant requiring him to remove the building because it was in violation of the building restriction quoted. Thereafter the present bill was filed.

It appears from an examination of the opinion filed by the learned court below in support of the decree that the conclusion reached rested, to some extent at least, on the proposition that this private garage, to be used as indicated, was a stable within the meaning of that term as it occurs in the restriction. With this conclusion we cannot agree. The language used by the parties in 1893 is to be construed according to its ordinary interpretation by the people at that time. It ought not to be necessary for a court, in the construction of a word of ordinary and daily use in the common speech of the people for centuries, to

have recourse to the work of the most modern and up-to-date lexicographer. The defendant offered to prove affirmatively that at the time the conveyance in question was made automobiles were not known in this country, either as horseless carriages or otherwise, and that as a consequence the parties to the contract, in the use of the word "stable," could not have had in contemplation a building like the one now in question. The offer was rejected. But apart from any proof on this subject, the parties themselves, by the pleadings, have determined that the building complained of was not a stable within the meaning of that term as it is used in the building restriction. The plaintiffs in the fourth paragraph of their bill affirm that "no stable was ever erected by the defendant on the said lot of ground, but he has recently undertaken to erect, on the front of said lot at the southeast corner thereof, a small stone building for use as a garage, &c." The answer of the defendant in turn affirms in its first paragraph that he has "never erected upon the said lot a stable nor any building for any offensive occupation or use."

In River Bank Improvement Co. v., Bancroft, 95 N. E. Repr. 256 [see also 34 L. R. A. (N. S.) 730] the Supreme Court of Massachusetts used the following language: "While it is true, as stated by the plaintiffs, that in the Standard Dictionary a stable is defined as a building often used for putting up vehicles, and that in the Standard and Century Dictionaries a garage is defined as a 'stable for motor cars' and 'a building, as a stable, for the storing of automobiles or other horseless vehicles,' we nevertheless think that the word 'stable' as commonly used and understood at the time of the imposition of these restrictions, especially when contrasted with other buildings usually appurtenant to a dwelling house, carried the idea not only of a building, but also the presence of domestic animals, like horses or cattle, as its occupants, and that such is the meaning of this word in the restriction. Accordingly it must be held that the building is not a stable within the

meaning of the restriction. And this is so even if, as argued by the plaintiffs, a garage is as objectionable as a stable." In the note attached to the report of this case in 34 L. R. A., supra, the learned editor points out that the conclusion reached in the case cited is supported by Beckwith v. Pirung, 134 App. Div. 608; 119 N. Y. Supp. 444. For these reasons we must hold that the building complained of is not a stable within the meaning of the term in the building restriction, and there is no foundation for a decree requiring its destruction on this account.

The defendant further offered to prove by a line of witnesses qualified to give such testimony that the construction of a building such as this on suburban property worked no injury whatever to the surrounding properties. All of this the learned judge below rejected as irrelevant. If a chancellor, moving cautiously, in a proceeding for a mandatory injunction, should be affected by all of the considerations laid down in the authorities we have quoted, we are not able to see how the rejection of this testimony can be justified. If, as the result of the admission of such testimony, a chancellor should be able to find that the plaintiff had nothing at stake but a naked legal right, a breach of which was followed by no injury tangible or perceptible, it would be not only his right but we think it would be his duty to withhold a decree involving the destruction of a building that had cost the defendant about $1,000.

Still further the defendant offered to prove that in a number at least of properties adjoining the one in question and in its immediate vicinity, which had been sold by the same grantors, no like restrictions were imposed. These offers were rejected. If such proof had been received, it would not of course work a legal release of any obligation into which the defendant had entered by the acceptance of his deed. But if it had the effect of convincing a chancellor that the result of a decree would merely compel the defendant to forego the use of a desirable con-

venience which worked no detriment to his neighbors nor to their property, again it might well be that such decree would be withheld in the aid of a plaintiff whose case exhibited no real equity. He would then be left to seek relief for the alleged breach of a naked legal right by his appropriate action at law.

The defendant further offered to prove by an apparently competent witness that the word "appendages" had a recognized meaning among builders and real estate men who bought and sold property. This was objected to and the learned trial court, in so far as he disposed of the offer and objection, used the following language: "I am of the opinion that it cannot be held that the garage is such appendage, necessary to the dwelling, and that therefore the structure referred to does not come within the provision of the covenant which I have read." The learned trial judge having taken this view, it was no longer necessary or pertinent for the defendant to prove, as he had offered to do, that the garage was not an "appendage" within the recognized meaning of that term among those who constantly used it, and the offer was neither rejected nor admitted but apparently abandoned.

We are not prepared to say, with the record in its present condition, that the garage complained of was not an appendage to the dwelling house mentioned in the restriction, but it would be manifestly unfair to the defendant to undertake to so construe it in the absence of the testimony not now in the record because of the conclusion reached by the learned trial judge in the language we have quoted. We are of the opinion that in determining the question raised by the bill and the answer, all of the evidence above referred to should have been received, so that the learned court below, and this court as well, could have a broad view of the whole situation in order to determine whether or not, by the application of the legal principles we have earlier cited, a chancellor should be moved to award a mandatory injunction.

The decree awarding a mandatory injunction is re-

versed and set aside, and the record is remitted to the court below with a procedendo. The costs of this appeal to be paid by the appellees.