[See preceding case.]

## Gatzmer, Appellant, *v.* St. Vincent School Society.

*Equity—Injunction—Doubtful rights.*

A mandatory injunction will not be issued where complainants' rights are not clear.

*Covenants—Building restrictions—Laches.*

Defendants owned land subject to a covenant that "no manufactory, workshop, steam-engine house, smith shop, . . . . or other building for offensive purposes or occupation, or building of any kind to be used for any purpose other than as and for a genteel cottage or dwelling house, stable or coach house, shall ever be built" on the land. The lessees of defendant, a boat club, built on the land a boat house, club house and a small building used as a carpenter shop for repairing boats. These buildings were completed in September, 1887. Notice to remove the buildings was not given by the complainant until January, 1889. *Held,* that the complainants were not entitled to a mandatory injunction.

Argued Jan. 26, 1892. Appeal, No. 56, Jan. T., 1892, by plaintiffs, William H. Gatzmer et al., from decree of C. P. No. 3, Phila. Co., March T., 1889, No. 415, dismissing bill in equity filed against the German Roman Catholic St. Vincent School Society of Philadelphia, and Jacob S. Disston and Horace C. Disston. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Bill in equity to compel the removal of certain houses erected on land in alleged violation of a covenant in a deed.

The bill averred that under a certain deed made by Gatzmer and others on the twenty-fifth day of February, 1856, a large tract of land at Tacony, in the Twenty-third Ward of the city of Philadelphia, running along the Delaware river, was conveyed, subject to certain covenants and restrictions against the

erection on any part of the lot situate between low-water mark of the river Delaware and Wissinoming street, to the grantors of said Catholic society; that a lease had been made by said society to said Disstons; and that the latter had erected, and were maintaining buildings on the restricted tract in violation of said covenants and restrictions.

An answer was filed by said society in which the existence of the restrictions, as was averred to have been imposed by said deed, was admitted, but in which it was denied that any buildings had been erected or were being maintained in violation of said restrictions.

The case was referred to U. C. Smith, Esq., as master, who recommended a decree as prayed for in the bill. Exceptions to the master's report were sustained by the court, REED, J., filing the following opinion:

" The complainants, the owners of property in the Twenty-third ward of the city of Philadelphia, are the beneficiaries of a covenant whereby the owners and occupiers of a certian lot of ground on the river Delaware, adjacent to the complainants' land, are bound by the following covenant, namely:

" That 'No manufactory, workshop, steam-engine house, smith shop, candle or glue manufactory, slaughter-house, dye-house, distillery, malt-house, hotel, tavern, porter or lager beer house, or other building for offensive purposes or occupation, or building of any kind to be used for any purpose *other than as and for a genteel cottage or dwelling house,* stable or coach-house, shall ever be built, erected or placed upon that part of the lot of ground above described, which is situate between low-water mark of the river Delaware and Liberty or Wissinoming street, as laid down on the plan of Tacony, and between the said Monroe street, as laid down as aforesaid, and the northern-most line of the said above-described tract, or any part thereof.'

" The covenant further stipulates that no building to be erected on the lot of land in question shall ever be *converted into* a manufactory, workshop, steam-engine house, etc. And it is further provided, that upon thirty days' notice in writing the owners or occupiers of the land in question shall remove the building erected in violation of the restriction, or failing in this shall permit the covenantees to enter and do so.

"The defendants are the 'German Roman Catholic Saint Vincent's Orphans' Asylum of Philadelphia and its Vicinity,' and Jacob S. Disston and Horace C. Disston.

"In the answer filed to the original bill by the Disstons, they say that, 'It is true said society' (namely, the Saint Vincent Asylum) 'leased to these defendants' the lot in question. When it came to the proof there was offered a paper which purported to be a lease from Charles Schmitt and others to the Keystone Boat Club of Tacony, and which was executed by Joseph Wirth, president, and Charles Schmitt and another, and by Jacob S. Disston, president.

"It was asserted that the description of this paper did not accord with the land actually held by the Boat Club, and it was claimed that under the admission by the defendants, the Disstons, that they were the lessees of the Boat Club property, the alleged writing was not competent evidence. The master refused to admit it, whereupon Disstons applied to the court for leave to amend their answer, which leave was granted.

"In this new answer they corrected the error made in their first answer, and set up a lease made by the Orphan Asylum to the Boat Club. In its answer the Orphan Asylum also stated that it had leased to the Boat Club.

"The evidence adduced before the master and the admissions in the pleadings show no relation of the defendants, the Disstons, to the property other than, first, that of contractors to build the club house, which relation terminated in September, 1887, when the house was finished, and secondly that of membership in the club.

"The Keystone Boat Club is an unincorporated society composed of numerous members and is in possession of the club house and grounds, claiming under the lease already described.

"It appears from the evidence that this club house is used as club houses ordinarily are, and there is no satisfactory proof of any unusual attendance at the place or irregular conduct on the part of those who so attend. The evidence also shows that the club house was completed in September, 1887, and that the thirty days' notice under the original covenant was first given by the complainants in January, 1889. Since the

giving of this notice and since the filing of the bill the only addition to this house has been a number of small shelters designed to protect from the weather the boats used by the members of the club. There is attached to the main club house also a room where boats are occasionally repaired and where perhaps some few have been built, but the evidence does not show that this portion of the house was built any later than the rest, namely, September, 1887.

"In our opinion the evidence does not warrant the master in finding it to be a carpenter shop within the meaning of the covenant relied upon by the complainants, but even if we thought otherwise it is not necessary to enter a decree enjoining the use of the room for such purpose in view of the laches of the complainant in this whole matter.

"The interpretation of the principal words of the restriction is not free from difficulty; the club house in question is not a 'dwelling house,' but whether it does not come within the alternative phrase a 'genteel cottage' is by no means so plain.

"It may be that in an action of covenant the complainants might recover their damages, if any, and it may even be conceded that upon establishing an actual nuisance in the erection or maintenance of the club, equity would give relief, but it seems to us that a chancellor ought not to use his strong arm and issue an injunction to remove an expensive building in the state of affairs disclosed by the evidence now before the court. It is true that a plain violation of a restriction, the terms of which were not open to question, has been restrained even where no injury to the complainant was apparent, and where the parties could perhaps have been left to their common law remedy, but the Supreme Court, in indicating the rights of owners of restrictions, as questioned by the late Chief Justice READ, has never gone so far as to sustain the issuing of a mandatory injunction in the case of a covenant doubtful in its meaning, and in favor of a complainant who had proved no injury arising from the breach thereof, and who had been so backward in the assertion of his claim as to have well misled the possessor of the servient property.

"In consideration of the complainants' default, we do not feel called upon to decide two other points raised before us:

first, whether the Orphans' Asylum, by leasing the property in order that a building should be put upon it, and exacting a stipulation that such building should not be used except as a 'boat house and club room' is subject to the injunction prayed for in the bill, even if this building comes within the restriction; and, secondly, whether the other defendants, Jacob S. and Horace C. Disston, being liable to suit not as lessees but only as club members, may properly take advantage of the nonjoinder of the other members of the Keystone Club.

" The exceptions to the master's report are sustained and the bill is dismissed."

*Error assigned* was the dismissal of the bill.

*Joseph Mellors* and *John G. Johnson,* for appellants.—A court of equity should grant the relief prayed for in cases like the present: St. Andrew's Church Ap., 67 Pa. 519; Attorney General v. Railway Companies, L. R. 3 Ch. Ap. 100; Hills v. Miller, 3 Paige, 254. The restriction in the deed is a contract and the interference of a court of equity is justified, on the ground of specific performance of a contract. See St. Andrew's Church Appeal, 67 Pa. 512; Scott v. Burton, 2 Ashmead, 325; Barret v. Blagrave, 5 Vesey J., 555; Stuyvesant v. Mayor, 11 Paige, 415; Com. v. Rush, 14 Pa. 196; Jarden v. P. W. & B. R. R., 3 Whar. 502.

The language of the deed containing the restriction constitutes a covenant running with the land. Equity will restrain the violation of such covenant. Biddle v. Ash., 2 Ashmead, 211; Com. v. Rush, 14 Pa. 186; Clark v. Martin, 49 Pa. 289.

In exercising the jurisdiction by way of mandatory injunction against acts in violation of contract, covenant or agreement, the court looks to the express stipulation of the agreement and is not, as in cases of trespass or nuisance, influenced by considerations as to the nature or extent of the damage. Storer v. Great Western Railway Co., 2 Y. & C. C. C. 48; Lloyd v. London, Chatham and Dover Railway Co., 2 D. J. &. S. 579; Kerr on Injunctions, *482.

A delay of fourteen months by a plaintiff in taking steps to prevent the continuance of a breach of a restrictive covenant will not amount to such acquiescence as to disentitle him to an injunction. Duke of Northumberland v. Bowman, 56 L. T. (N. S.), page 773.

*John Roberts*, for appellees.—The complainants were guilty of laches: Conover v. Smith, 17 N. J. Eq. 51; Chesterman v. Gardner, 5 Johns. Ch. 29; Parrish v. Koons, 1 Par. 92; Ins. Co. v. Union Canal Co., 2 Brightly, 48.

If a man is silent when it is his duty to speak, he shall not be permitted to speak when it is his duty to be silent. Blake v. Exchange Ins. Co., 12 Gray, 265; Young v. Vough, 8 C. E. Green, 325; Bisph. Eq., p. 350–4; Pickard v. Sears, 6 Adolphus & Ellis, 469; Chapman v. Chapman, 9 P. F. Smith, 214; Carr v. Wallace, 7 Watts, 400; Smith v. McNeal, 18 P. F. Smith, 164.

A mandatory injunction will not be issued where complainant's rights are not clear: R. R. Co. v. Central Stock Yard & T. Co., 45 N. J. Eq. 50; Mayer's Ap., 23 P. F. Smith, 164; Gaskin v. Balls, 13 Ch. D. 329; Baxter v. Bower, 44 L. J. Ch. 625: Outcalt v. Geo. W. Helme Co., 15 Stew. Eq. 665.

PER CURIAM, February 1, 1892.

We are of opinion that the court below did not err in dismissing the complainants' bill. The case is not so clear as to justify a mandatory injunction. It is, at least, doubtful, whether the building itself is a violation of the restriction. The improvements complained of consist of a boat house, club house, and building alleged to be used as a carpenter shop. The latter, however, appears to have been used as a carpenter shop merely for repairing the boats belonging to the club, and, occasionally, the construction of a new one. The club house in question is certainly not a dwelling-house, but it is not clear that it does not come within the alternative phrase, a " genteel cottage."

We also agree with the learned judge below that there has been considerable delay in making this application. He says, in his opinion: " It appears from the evidence that the club house is used as club houses ordinarily are, and there is no satisfactory proof of any unusual attendance at the place, or irregular conduct on the part of those who so attend. The evidence also shows, that the club house was completed in September, 1887, and that the thirty days' notice, under the original covenant, was first given by the complainants in January, 1889. Since the giving of this notice, and since the fil-

ing of the bill, the only addition to this house has been a number of small shelters, designed to protect from the weather the boats used by the members of the club. There is attached to the main club house also a room where boats are occasionally repaired, and where, perhaps, some few have been built, but the evidence does not show that this portion of the house was built any later than the rest, namely, September, 1887."

A mandatory injunction will not be issued where complainants' rights are not clear: Railroad Co. v. Stock Yard and T. Co., 45 N. J. Eq. 50; Mayer's Ap., 73 Pa. 164.

The affirmance of this decree does not preclude the complainants from their remedy at law.

The decree is affirmed, and the appeal dismissed at the costs of the appellants.