**BIG BASS LAKE COMMUNITY ASSOCIATION**

v.

**Mark WARREN and Michael Dennehy, Appellants**

**Big Bass Lake Community Association, Appellant**

v.

**Mark D. Warren and Michael F. Dennehy.**

Commonwealth Court of Pennsylvania.

Argued April 7, 2008.

Decided June 17, 2008.

Gregory D. Malaska, Stroudsburg, for designated appellant, Big Bass Lake Community Association.

No appearance entered on behalf of appellees.

BEFORE: McGINLEY, Judge, PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

This case involves the cross-appeals of Mark D. Warren and Michael F. Dennehy (hereafter collectively, Lot Owners) and of Big Bass Lake Community Association (Association). Lot Owners have appealed a mandatory injunction issued by the Court of Common Pleas of Wayne County (trial court) directing them to remove a landscaping wall they erected that was found to interfere with the Association's utility easement and to encroach upon the Association's right-of-way. The Association has appealed the trial court's denial of its request for attorney fees and costs.

Big Bass Lake Community (Big Bass) is a planned community located in Wayne and Lackawanna Counties that is governed by the Pennsylvania Uniform Planned Community Act, 68 Pa.C.S. §§ 5101–5414. Big Bass consists of individually owned lots and common areas owned by the Association for the benefit of the lot owners. These common areas owned by the Association consist of lakes, recreational facilities, and private roads located in Big Bass.

The boundaries of the individually owned lots are marked by visible property line pins and extend to the Association's 40–foot wide right-of-way.[1]

■ The owners of lots within Big Bass are bound by a series of restrictive covenants that govern the use of their property. *See* Declaration of Covenants Pertaining to Land of Big Bass Lake, Inc. (Covenants), R.R. 21a–28a.[2] Relevant here are two covenants. The first, Covenant VII, establishes the Association's utility easement, which authorizes the Association to install utility fixtures and lines on a lot owner's property. The second, Covenant III, guarantees lot owners the right to use Association roads, regardless of any transactions that may take place between the Association and third parties.

On April 1, 2006, Lot Owners began a landscaping project designed to give them more privacy. To that end, they created a raised ground planter for trees and bushes, which is held in place by an L-shaped stone retaining wall 22 to 27 inches high and approximately 50 feet long. The wall is constructed of boulders and stones that have been laid dry, *i.e.*, without mortar. Most of the wall runs along the side of State Park Drive, an Association private road approximately 20 feet wide and placed within the Association's 40–foot wide right-of-way. The wall is "at least" three feet from the road's paved edge, according to Lot Owners. Notes of Testimony, March 1, 2007, at 62 (N.T. ——); R.R. 139a.

Two or three days after the project began, an employee of the Association, Rebecca Kallensee, noticed the construction of the wall and spoke to Mark Warren, one of the Lot Owners, about it. Kallensee asserted that the wall interfered with the Association's utility easement. Thereafter, she faxed Lot Owners a copy of the "plot plan" of their property with the message that she hoped "this information will be helpful to you in relocating your planter walls and trees."[3] C.R., P. Ex. 9.

On April 26, 2006, Lot Owners' counsel sent a letter to Kallensee noting that the current covenants placed no restrictions on what a landowner can plant or develop in the Association's easement areas. C.R., P. Ex. 10. In response, on June 24, 2006, the Association wrote to Lot Owners, advising them that their stone wall "encroaches onto Association property and the utility easement running along [the Lot Owners'] property border." C.R., P. Ex. 12. The

1. *See* Certified Record, Plaintiff's Exhibit 3 (C.R., P. Ex. ——). The plot plan shows the right-of-way as extending from the lot lines on one side of the road to the lot lines on the other side of the road. It shows the right-of-way to be 40 feet wide. The right-of-way is also expressed as extending from the center of the road 20 feet in each direction. Complaint, ¶ 24.

2. Covenant VIII provides as follows:
 Grantee covenants and agrees to accept membership in the Association and to hold such memberships so long as he shall own Lot or other land area and to relinquish such membership when he shall no longer own. Grantee agrees to be bound by the By-laws of said Association which are made part of and incorporated by reference in this Declaration.
 Reproduced Record at 25a (R.R. ——). "Grantee" refers to the current lot owner. The deed of each lot in Big Bass states that each lot owner takes the property subject to the Declaration of Covenants. R.R. 215a. Covenants that run with the land are personally binding on the current holder, as well as any future successors in title. *Stillwater Lakes Civic Association v. Krawitz*, 772 A.2d 118, 121 n. 3 (Pa.Cmwlth.2001).

3. The plot plan showed the property lines for Lot Owners' property in relation to State Park Drive. C.R., P. Ex. 9. The utility easement extends 10 feet into Lot Owners' property lines and 10 feet from both sides of a road.

letter further threatened legal action if Lot Owners did not remove the wall. In the meantime, Lot Owners identified 297 other properties with landscaping improvements, including boulders and walls, which were also located within the Association's utility easement or right-of-way, usually at the driveway entrance.

On December 19, 2006, the Association filed a complaint in equity, alleging, *inter alia*, the following:

> 24. Under Covenant VII, no improvements, including boulders, solitary or in planters can be placed ten (10) feet extending inwardly from any boundary line of any Lot, street or interior. Additionally, no improvements whatsoever are permitted within the property easement area which is twenty (20) feet from the center line of the road (State Park Drive).

> 25. The present improvements are clearly within the Association right of way, as evidenced by the independent survey report … [that] is based on the original subdivision plans, entitled "Subdivision Map of Lands of Section A, Big Bass Lake, Inc. Lehigh Township, Wayne County Pennsylvania," filed with the Wayne County Recorder of Deeds office at Map Book 16, Page 110, which is hereinafter incorporated by reference.

R.R. 7a. The Association requested that the Lot Owners be required to "remove any and all boulders and landscaping improvements within the [Association's] right-of-way abutting [Lot Owners'] property." R.R. 9a. The Association also sought to have Lot Owners pay the Association "all reasonable enforcement costs incurred in this matter." *Id.*

With the complaint, the Association filed a motion for preliminary injunction. A hearing on the preliminary injunction was held on March 1, 2007, at which both parties presented evidence.

On behalf of the Association, Donald Chappa, Chief Executive Officer and Chairman of the Board of Directors of the Association, testified about the Association's utility easement, in Covenant VII, which authorizes the Association to enter a property for utility use, such as "water, sewer, telephone, electric, drainage." N.T. 7; R.R. 84a. Chappa also testified that the Lot Owners' stone wall encroached on the Association's right-of-way for State Park Drive and presented a snow removal hazard. Chappa conceded that other lot owners had also encroached upon the Association's utility easement and right-of-way with landscaping improvements and stone walls, but he did not believe the other encroachments were as significant as Lot Owners' encroachment. In any case, Chappa stated that the Association was pursuing enforcement actions against other violations.

William Dunning, a licensed surveyor, testified as an expert witness for the Association. After surveying the Lot Owners' property lines, using both the subdivision plan and property line pins, Dunning concluded that the Lot Owners' stone wall encroached 22.5 feet into the Association's 40–foot wide right-of-way, in which the road, approximately 20 feet wide, was built. The wall is not, however, on the road. This is because State Park Drive was not placed in the middle of the right-of-way; it is partially outside the right-of-way on the land across the road from Lot Owners.[4] N.T. 33; R.R. 110a.

---

4. Stated otherwise, the Association's road encroaches on land that is part of the plot of the lot owners adjoining the road.

David Harris, the maintenance supervisor for the Association, also testified. He explained that the Lot Owners' stone wall made it difficult to plow the road because he could not push snow over the wall. Harris also stated that the encroaching walls and landscaping features of other Big Bass lot owners did not impede snow removal to the same extent as the Lot Owners' stone wall.

In response, one of the Lot Owners, Mark Warren, testified. He explained that he and the other joint owner did not believe they were in violation of either covenant and, certainly, never intended to violate any covenant. Acknowledging that Covenant VII gave the Association a right to go onto their property to place a utility line or fixture, Warren noted that the covenants are silent about a property owner's ability to make improvements in the easement, such as his landscaping project. He also noted that the covenants did not require property owners to obtain the Association's approval before making any improvements within the Association's utility or right-of-way easements. He denied that the stone wall impeded either traffic on the private road or snow removal, noting that during a recent, very bad snowstorm on Valentine's Day, travel on State Park Drive next to the wall was unimpeded.

Lot Owners also introduced testimony of Elmer Kenneth Acker, a licensed surveyor, who testified as an expert witness. Acker testified that he performed a survey of five properties within the Association that contained encroachments on the Association's right-of-way. With respect to the extent of said encroachments, Acker testified that they encroached

> [as] much in the fact that they were on the right-of-way as his is. Some of them

are not as close to the roadway. The roadway doesn't seem to be the controlling factor, it seems that the right-of-way is a controlling factor. The deed restriction limits the encroachment. These are violation[s] of that same deed restriction.

N.T. 48; R.R. 125a. He described the "deed restriction" as proscribing "permanent" improvements on the utility easement or on the right-of-way.[5] Id.

Finally, Lot Owners introduced the testimony of David Boruta, the excavating contractor who installed the rock wall at issue and who removes snow on Big Bass roads under contract with the Association. Boruta testified that over the past ten years, he has worked on 50 to 100 landscaping projects within Big Bass that included clearing and planting trees, digging foundations and installing landscaping projects that involved rock walls. These projects were constructed on Association easement areas. He described one wall that was approximately the same length as that he built for Lot Owners but was more permanent because it consisted of interlocking blocks held together by silicone adhesive. By contrast, he described the wall he built for Lot Owners as easily removable because it consisted of dry-laid natural stones that, in his opinion, blended with the surroundings. Boruta testified that he would never have undertaken Lot Owners' landscaping project had he believed it to violate the Association's covenants, but nothing in his experience of working in Big Bass could have led him to such a belief. He did not believe that Lot Owners' wall, or any of the roadside walls in Big Bass, impeded snow plowing. He agreed that snow could not be piled where the Lot Owners' wall was located; however, by angling the plow differently, he

---

**5.** It is not clear to which "deed restriction" Acker refers.

explained that the plow could push the snow along the wall and pile it at the end.

The trial court issued a permanent injunction, finding, in relevant part, as follows:

4. The stone wall constitutes a 22½ foot encroachment on the dedicated right-of-way of State Park Drive.

5. The stone wall significantly hinders the Plaintiff's efforts to plow and remove the snow from State Park Drive.

6. The Defendants' construction of the stone wall is a violation of Covenant VII of the Community's Declaration which states:

Grantor [6] reserves onto itself an easement to install or cause to be installed or permit to be installed by others, on, over, or beneath the surface of any Lot or other land area in the development, utility line or lines in the ten foot (10) wide areas extending inwardly from any boundary line of any Lot or other land area (street or interior). However, if Grantee has treated (with Grantor's consent) more than one plotted lot as for single lot usage, then such ten (10) foot utility easement shall be measured (inwardly) from boundary lines of the enlarged area.

7. The stone wall interferes with the unit owners' right to use State Park Drive in violation of Covenant III of the Declaration which states:

*III GRANTEE'S RIGHT TO USE PRIVATE ROADS*

Grantor hereby covenants and agrees that Grantee shall have ingress and egress, at all times, on the Private Roads (as defined above) in common with the Grantor or the Association and all other owners of part of the Development. Irrespective of any transactions between Grantor and the Association or any other person or persons or bodies, that right of use in Grantee shall never be interfered with or terminated excepting for possible relocation as hereinafter provided or when temporarily unavoidable for maintenance purposes.

Grantor may at any time or times and from time to time change or alter the location of any road or any part of any road so long as such alteration or change does not result in taking of any part of Grantee's land at the time of conveyance to Grantee or materially increase the distance from Grantee's land to any public highway. Nothing herein contained shall be interpreted as dedicating any such Private Road to public use; but, nevertheless, Grantor may cause any such road to be dedicated to the public and hence to become a public highway when accepted by the public. As above provided in Part I under definition "Common Property," Grantee never shall have title to any part of the bed of Private Road, whether or not Grantee's land abuts any such Private Road.

8. None of the other encroachments in the community causes the same degree of interference and hazard as that created by Defendants' stone wall.

Trial Court Opinion, at 1–3, Findings of Fact Nos. 4–7. The trial court denied the Association's request for attorney fees, punitive damages and costs. Both parties appealed to this Court.[7]

---

**6.** The Association has succeeded to the Grantor, and all parties agree that the word "Grantor" in a covenant identifies the Association. "Grantee" refers to a Big Bass lot owner.

There are two basic questions presented in these cross-appeals. The Lot Owners contend the trial court erred in granting preliminary injunctive relief. The Association asserts that the trial court erred in denying the Association's request for reimbursement of the costs and attorney fees it incurred in obtaining a permanent injunction.[8]

We consider, first, the Lot Owners' appeal.[9] The Lot Owners argue that it is unclear whether the trial court granted a preliminary or permanent injunction. They argue that, in any case, the Association did not have a clear right to mandatory injunctive relief and, further, by allowing other lot owners to build landscaping projects within the Association's easement areas for many years, the Association has waived its right to pursue legal action against Lot Owners.

An injunction is a court order that can prohibit or command virtually any type of action. It is an extraordinary remedy that should be issued with caution and "only where the rights and equity of the plaintiff are clear and free from doubt, and where the harm to be remedied is great and irreparable." 15 STANDARD PENNSYLVANIA PRACTICE 2D, § 83:2 (2005). The required elements of injunctive relief are: a clear right to relief; an urgent necessity to avoid an injury that cannot be compensated in damages; and a finding that greater injury will result from refusing, rather than granting, the relief requested. *Id.* at § 83:19. Even where the essential prereq-

---

7. The parties cross-appealed the trial court's order, dated March 20, 2007, to the Pennsylvania Superior Court. On June 27, 2007, the Superior Court transferred the parties' cross-appeals to this Court.

8. The parties do not agree on whether the trial court issued a preliminary or permanent injunction. The standards are different for each injunction.

In reviewing a preliminary injunction, "we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Roberts v. Board of Directors of the School District of the City of Scranton*, 462 Pa. 464, 469, 341 A.2d 475, 478 (1975). However, where the rule of law relied upon is palpably erroneous, the preliminary injunction will be vacated. *Id.*

In reviewing a grant of a permanent injunction that turns on "whether the lower court properly found that the party seeking the injunction established a clear right to relief as a matter of law," the standard of review for a question of law is *de novo* and the scope of review is plenary. *Penn Square General Corporation v. Board of County Commissioners of the County of Lancaster*, 936 A.2d 158, 167 n. 7 (Pa.Cmwlth.2007) (citation omitted). To prevail on a claim for a permanent injunction, the plaintiff must establish a clear right to relief, that there is an urgent necessity to avoid an injury which cannot be compensated for by damages, and that greater injury will result from refusing rather than granting the relief requested. *Coghlan v. Borough of Darby*, 844 A.2d 624, 629 (Pa.Cmwlth.2004). However, unlike a claim for a preliminary injunction, the plaintiff need not establish either irreparable harm or immediate relief. *Buffalo Township v. Jones*, 571 Pa. 637, 644, 813 A.2d 659, 663–664 (2002).

9. Lot Owners raised five issues that can be summarized as follows. They claim that the trial court erred in granting a preliminary injunction because (1) the evidence did not prove that the wall presented a safety hazard; (2) the evidence did not prove that the wall presented a snow removal hazard; (3) the trial court disregarded expert testimony that the Lot Owners' wall encroached on the Association's right-of-way less than the improvements of other lot owners; (4) the trial court disregarded the fact that no legal action was taken by the Association against these other encroaching lot owners; and (5) the Association is not entitled to attorney fees and costs. In essence, Lot Owners contend that the trial court erred in issuing the injunction because the evidence did not support the trial court's factual findings and the facts, as found, did not support an injunction.

uisites of an injunction are satisfied, the court must narrowly tailor its remedy to abate the injury. *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 7, 369 A.2d 1164, 1167 (1977). It has often been said that "the decree of a chancellor is of grace, not of right. This does not, of course, mean that decree is to be granted or withheld merely at the whim or caprice of the chancellor." *Asbury v. Caroll*, 54 Pa.Super. 97 (1913). The power to grant or to refuse an injunction "rests in the sound discretion of the court under the circumstances and the facts of the particular case...." *Rick v. Cramp*, 357 Pa. 83, 91, 53 A.2d 84, 88 (1949).

█ Although every injunction is extraordinary, the injunction that commands the performance of an affirmative act, a mandatory injunction, is the rarest, described as an "extreme" remedy. 15 STANDARD PENNSYLVANIA PRACTICE 2D, § 83:9 (2005); *Roberts*, 462 Pa. at 469–470, 341 A.2d at 478 (1975). The case for a mandatory injunction must be made by a very strong showing, one stronger than that required for a restraining-type injunction. *Mazzie v. Commonwealth*, 495 Pa. 128, 134, 432 A.2d 985, 988 (1981); *Allen v. Colautti*, 53 Pa.Cmwlth. 392, 417 A.2d 1303, 1307 (1980).

█ An injunction can be an appropriate remedy where real property rights are concerned. *Diamond v. Diamond*, 372 Pa. 562, 94 A.2d 569 (1953). These real property rights may take the form of a restrictive covenant or an easement. Accordingly, a building erected in breach of a covenant may be ordered removed; however, the breach of the covenant must be very clear.[10] *Gatzmer v. German Roman Catholic St. Vincent Orphans' Asylum*, 147 Pa. 313, 23 A. 452 (1892); *Lavan v. Menaker*, 280 Pa. 591, 124 A. 743 (1924). Similarly, an injunction is appropriate to restrain interference with an easement. *Moyerman v. Glanzberg*, 391 Pa. 387, 138 A.2d 681 (1958). Where the plaintiff's real property interest is in the nature of fee simple title, an encroachment of only six inches by an adjoining landowner may be ordered removed by a mandatory injunction. *Baugh v. Bergdoll*, 227 Pa. 420, 76 A. 207 (1910). This is because the occupation of an adjoining landowner's property, if continued, "will ripen into a complete title." *Dodson v. Brown*, 70 Pa.Super. 359, 361 (1918). However, the removal of an adjoining landowner's encroachment will not be ordered where it would be inequitable, by virtue of the property owner's acquiescence, laches or inducement. *Baugh*, 227 Pa. at 422, 76 A. at 208. Accordingly, a delay in invoking the aid of equity until after the defendant, with the knowledge of the plaintiff, has expended a considerable sum of money, can deny the plaintiff injunctive relief.[11]

10. Restrictive covenants are generally disfavored by the law and may lose their utility through the passage of time, but covenants of recent vintage may be enforced by injunction. *Perrige v. Horning*, 440 Pa.Super. 31, 654 A.2d 1183, 1187 (1995).

11. In *Wakeling v. Cocker*, 208 Pa. 651, 57 A. 1104 (1904), the Supreme Court affirmed the denial of a mandatory injunction to a plaintiff seeking to compel an adjoining landowner to rebuild its party wall that was encroached upon during construction of the adjoining house. In doing so, the court observed:

It requires a much stronger case to move a chancellor to put forth his strong arm to compel a positive act on the part of the defendant, than to restrain him from committing a wrongful one. Had the plaintiff asked the court to restrain the contractor from taking down the wall, it may be that it would have been moved to do so, but plaintiff asks the court to order him to build it up again as it stood at first.

*Id.* at 653, 57 A. 1104. Accordingly, the Court held that it was "one of the very cases where equity will decline to take jurisdiction." *Id.* at 653, 57 A. at 1105.

Proving the existence of an encroachment does not guarantee the plaintiff injunctive relief.[12] In *Moyerman,* 391 Pa. 387, 138 A.2d 681, the Supreme Court denied the issuance of an injunction to a plaintiff seeking to discontinue a continuing and permanent trespass upon plaintiff's land owned in fee, albeit burdened by defendant's easement. First, the equities did not favor an injunction because the defendant had substantially completed construction before realizing that it was not he who owned the driveway in fee, on which his house encroached by 14 to 16 inches, but, rather, it was plaintiff. Second, the encroachment did not materially interfere with plaintiff's use of the driveway. *Id.* at 391, 138 A.2d at 683. Accordingly, the Supreme Court limited the plaintiff's remedy to damages in trespass.[13] On the other hand, where a defendant has deliberately and willfully built upon plaintiff's property, tortiously or in bad faith, injunctive relief should be granted, regardless of the equities. *Kanefsky v. Dratch Construction Co.,* 376 Pa. 188, 196, 101 A.2d 923, 926–927 (1954).

Here, the Association sought a mandatory injunction to compel Lot Owners to remove their raised ground planter. The complaint alleged that Covenant VII barred any improvements in the Association's utility easement area, and that Lot Owners' improvements encroached upon the Association's right-of-way. Complaint, ¶¶ 24–25. After a hearing, the trial court found, as fact, that the wall encroached upon the Association's right-of-way and violated Covenants III and VII. On these findings, the trial court entered an injunction.

The Lot Owners contest the trial court's finding that they have violated any covenant. The only covenant identified in the complaint was Covenant VII, which grants the Association the right to enter onto a lot owner's property to install a water line or a telephone pole. However, as pointed out by Lot Owners, Covenant VII nowhere

**12.** An encroachment may be remedied in more than one way. The encroachment of tree limbs, branches or roots from an adjoining landowner's property may be alleviated by self-help, *i.e.,* by trimming the offending branches. *Jones v. Wagner,* 425 Pa.Super. 102, 624 A.2d 166 (1993), *appeal denied,* 536 Pa. 626, 637 A.2d 286. An action in ejectment can be a proper remedy for the recovery of land unlawfully encroached upon. *Ratajski v. West Penn Manufacturing & Supply Corp.,* 198 Pa.Super. 588, 182 A.2d 243 (1962); *Buck v. Brunner,* 167 Pa.Super. 142, 74 A.2d 528 (1950). An action in ejectment can be used where the property interest at stake is an easement or right-of-way, as well as when the property interest is in fee. *Williamstown Borough Authority v. Cooper,* 404 Pa.Super. 516, 591 A.2d 711, 714 n. 4 (1991).

**13.** The fact that a plaintiff has a remedy in a trespass cause of action does not rule out the availability of injunctive relief. The Pennsylvania Superior Court has explained as follows:

The question of expense or damage cannot be considered. The aggrieved property owner's right is absolute. However hard his acts might be regarded, he asks the court for the enforcement of a legal right of a positive character with respect to land which it is conceded was wrongfully taken from him. He is entitled to a decree. The rule in such case is founded on sound reason. If damages may be substituted for the land, it will amount to an open invitation to those so inclined to follow a similar course and thus secure valuable property rights. *The amount of land involved does not change the situation. Here is a wrongful invasion of a positive right to real property.* *Ochroch v. Kia–Noury,* 345 Pa.Super. 161, 497 A.2d 1354, 1356 (1985) (quotation omitted) (emphasis added). In *Ochroch,* the defendant was ordered to remove a chain link fence that encroached upon the property of an adjoining landowner and to remove an unsightly landfill, consisting of rubbish, stumps and concrete blocks, and to replace this fill with a graded embankment covered with pachysandra.

states that a lot owner may not landscape within the Association's utility easement.[14] Covenant III confers a right upon the lot owners in Big Bass to use the private roads in Big Bass, and it obligates the Association not to interfere with or terminate the Grantee's right to use the private roads. However, Covenant III does not burden Grantees in any way.[15]

On the other hand, Lot Owners do not challenge the trial court's finding that their stone wall has encroached upon the Association's right-of-way. However, they do not believe their wall interferes in any meaningful way with any other lot owner's use of the right-of-way, and they contest the trial court's finding that it presents a hazard.[16]

 We cannot say at this juncture that the Association has made the very strong showing required for a mandatory injunction, preliminary or permanent. It is unclear that there has been any covenant violation, let alone one that warrants

the issuance of mandatory injunctive relief. As noted, Covenant VII does not proscribe landscaping projects within the utility easement, and Covenant III only confers rights, not burdens, upon lot owners. Although there is no disagreement that Lot Owners' wall encroaches upon the right-of-way, it is by no means clear that this encroachment justifies injunctive relief. First, the Association has not established the nature of its claimed property right. It is not clear whether its right-of-way was established by easement over the land of adjoining lot owners or by fee simple title.[17] Second, the mere existence of an encroachment is not adequate to justify equitable relief. If so, every driveway in Big Bass, which also encroach on the Association's right-of way, would be subject to removal by injunction. The encroachment must significantly interfere with the use of the right-of-way. *Moyerman*, 391 Pa. at 391, 138 A.2d at 683. Given the Association's longstanding tolerance of encroachments, it is not clear that the equities

---

14. The utility easement is expressed two ways. It extends ten feet from the edge of the road. It also extends ten feet into each of the four sides of a lot. If the easement forbade improvements in the utility easement area, then a lot owner's grass lawn would have to terminate ten feet shy of each of the four sides of a lot. This is illogical and unnecessary. When the Association finds it necessary to exercise its rights under the utility easement, the Association can remove whatever grass, bush or flower bed has been planted in the easement area.

15. Further, Covenant III deals with the right to use the roads in Big Bass, and it does not speak to the right-of-way in which the road is placed.

16. A trial court's factual findings will not be disturbed on appeal unless "the record affords them inadequate evidentiary support or when they have been premised upon erroneous inferences and deductions ... from the evidence." *Moyerman*, 391 Pa. at 391, 138 A.2d at 684.

17. The Association's complaint describes the right-of-way as an easement. Complaint, ¶ 24. The Association's deed incorporates the plot plan that shows the 40-foot wide right-of-way throughout Big Bass, but the plot plan does not identify the right-of-way as held in fee by the Association or by easement on the land of adjoining lot owners.

Generally, a "right-of-way" consists of an easement of use over another's land. "The owner of the land over which the right-of-way is granted reserves all incidents of ownership that are not conveyed." *Patricca v. Zoning Board of Adjustment of the City of Pittsburgh*, 527 Pa. 267, 275 590 A.2d 744, 748 (1991). However, a right-of-way "can consist of fee where it is clear from the agreement of the parties...." *Id.* at 276 n. 4, 590 A.2d at 748 n. 4.

Regardless, the harm for injunctive relief must be measured by substantial interference with the use of the right-of-way.

favor the Association. *Baugh,* 227 Pa. at 422, 76 A. at 208. The trial court has not made any findings relating to the balancing of the equities, and this must be done in any request for an injunction unless Lot Owners' encroaching landscaping project was tortious and done in bad faith. *Kanefsky,* 376 Pa. at 196, 101 A.2d at 926–927. Finally, it is not clear that the trial court narrowly tailored relief to address the harm. *John G. Bryant Co.,* 471 Pa. at 7, 369 A.2d at 1167.[18]

 However, we need not decide at this juncture whether the Association has made its case for a mandatory injunction. This is because we conclude that the trial court erred in transforming the hearing on a preliminary injunction into a hearing on a permanent injunction.

The trial court stated in its opinion that the parties agreed to this transformation. On this point, the record provides as follows:

> [COUNSEL FOR LOT OWNERS]: Your Honor, at this point I'd like to move for a directed verdict on the part of [the Lot Owners]. I don't believe at this time that the [Association] has been able to illustrate all of the elements necessary to obtain a preliminary injunction, specifically, irreparable harm and [imminent] danger. I believe their case is lacking in timeliness to a directed verdict specifically on those issues. I think that there are other remedies available to them besides the remedy that they are seeking. This is an equitable one, four elements that must be shown; two of which are immediate and [irreparable] harm.
>
> [COUNSEL FOR ASSOCIATION]: Your Honor, the testimony and the pho-

tographs were introduced. If you'd like I can recall and have them state will this cause you irreparable harm. I think the testimony clearly establishes [their] right to a permanent injunction to have those rocks removed.

> THE COURT: [You're] asking for a permanent injunction. You're talking about temporary injunction. What are you talking about? Who's talking about what?
>
> [COUNSEL FOR ASSOCIATION]: I've asked for a preliminary injunction which would in fact remove the rocks.
>
> THE COURT: And you're talking about a temporary one, right? You were here at the full hearing as far as I know. Is that right?
>
> [COUNSEL FOR LOT OWNERS]: Correct, Your Honor.
>
> [COUNSEL FOR ASSOCIATION]: We can't move them back after this—
>
> THE COURT: Denied. [Call] your witness.

N.T. 42; R.R. 119a.

The above discussion on the Lot Owners' request for directed verdict, which request was denied, is the only discussion in the record on the scope of the hearing. The exchange does not memorialize an agreement of the parties to make the preliminary injunction hearing the final hearing on the merits. Indeed, the Association's post-hearing brief filed with the trial court argued that its evidence satisfied the elements of a preliminary injunction, not a permanent injunction. C.R., Item No. 10 at 4–9. The Association would not have made this argument if it thought the question before the trial court was whether to issue a permanent injunction.

---

**18.** A narrow injunction order might, for example, order the wall pushed back or reduced in height.

■ This Court has held that a "court may not treat a hearing for a preliminary injunction as a final hearing and as a basis for a permanent injunction, unless the parties stipulate to the contrary." *New Milford Township v. Young*, 938 A.2d 562, 566 (Pa.Cmwlth.2007) (quotation omitted). As the Pennsylvania Supreme Court has explained:

> The mere holding of hearings with regard to a motion for a preliminary injunction does not somehow morph that motion into a request for a permanent injunction. In fact, our rules specifically contemplate that hearings may be held on requests for preliminary injunctions. *See* PA. R.C.P. 1531.[19]

*Warehime v. Warehime*, 580 Pa. 201, 208–209, 860 A.2d 41, 46 (2004). The trial court erred in converting the hearing on the preliminary injunction to a final hearing on the merits of the permanent injunction because it did so without a stipulation from the parties. Accordingly, the trial court erred in granting a permanent injunction, requiring that its order be vacated and the matter remanded.[20]

Based on the foregoing, the trial court's order awarding the Association permanent injunctive relief is vacated, and the matter remanded for further proceedings.

### *ORDER*

AND NOW, this 17th day of June, 2008, the order of the Court of Common Pleas of Wayne County, dated March 20, 2007, granting permanent injunctive relief is hereby VACATED and this matter is REMANDED for further proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.

---

**19.** Rule 1531(a) provides, in pertinent part, as follows:

> A court shall issue a preliminary or special injunction only after written notice and hearing unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice. In determining whether a preliminary or special injunction should be granted and whether notice or a hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof which the court may require.

PA. R.C.P. No. 1531(a).

**20.** In light of this disposition, we need not address the Association's appeal, *i.e.*, that the trial court erred in denying its demand for attorney fees and costs. The Association contends that it is entitled to costs and attorney fees pursuant to the Uniform Planned Community Act, 68 Pa.C.S. § 5315(g), which provides that a homeowners' association may recover costs and reasonable attorney fees where it prevails in a suit "brought under this section." A suit "under this section" appears to be one brought to enforce an assessment imposed by lien, as opposed to a suit brought to enforce covenants.