IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eagleview Corporate Center   :
Association,        :
      Appellant   :
           :
   v.       : No. 52 C.D. 2020
           : Argued: November 9, 2020
Citadel Federal Credit Union  :

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
     HONORABLE MICHAEL H. WOJCIK, Judge (P.)
     HONORABLE ELLEN CEISLER, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT     FILED: December 29, 2020

Eagleview Corporate Center Association (Association) appeals an order of the Court of Common Pleas of Chester County (trial court) denying the Association's request for a mandatory injunction to compel Citadel Federal Credit Union (Citadel) to install screening around the air-conditioning condensing units on the rooftop of Citadel's building. For the reasons to follow, we affirm.

**Background**

In April of 2010, Citadel purchased an office building located in the Eagleview Corporate Center, which was developed pursuant to the Uniform Planned Community Act, 68 Pa. C.S. §§5101-5414. An "Amended and Restated Declaration of Easements and Protective Covenants and Restrictions for the Center" (Declaration) imposes duties upon, and creates rights in, property owners in the Center. The Association is charged with the management of the Eagleview Corporate Center and enforcement of the covenants in the Declaration.

In September of 2010, Citadel installed air-conditioning condensing units on the rooftop to cool its data processing equipment located inside the building.

Article VIII, Section 8.3(c) of the Declaration addresses the installation of exterior mechanical equipment and states as follows:

> (c) Exteriof Equipment. *Exterior mechanical and electrical equipment*, including, without limitation, air conditioning equipment, air handling equipment, transformers, transclosures, pump houses, communication towers, vents and fans, *whether mounted on the roof or walls of any building or on the ground, shall be placed or screened so that the predominant design lines of the building or structure continue without visual distraction* or interruption. If any such equipment is not screened from the view of any interior roadway, such equipment shall be separately screened as approved by the [Association's Architectural Control] Committee. The height of any such screening shall be at least equal to the height of the equipment to be screened.

Declaration, Art. VIII, §8.3(c) (emphasis added); Reproduced Record at 490a-91a (R.R. ___). Contending that the placement of Citadel's equipment created a "visual distraction," the Association demanded that Citadel remove the equipment and place it on the ground. Citadel refused.

In February of 2011, the Association initiated a suit in equity to compel Citadel to remove the equipment and to enjoin Citadel from making any future alterations to its building without the Association's approval. Citadel counterclaimed, seeking a declaratory judgment that the Association had no authority under the Declaration to require the placement of air-conditioning equipment on the ground.

On January 24, 2014, after a bench trial, the trial court denied the Association's request for an injunction. The trial court concluded that the Declaration expressly authorized Citadel to install equipment on the roof. Finding that the visual impact of the equipment was *de minimis*, the trial court held that the

2

Association did not establish harm. In accordance with these factual findings and legal conclusions, the trial court entered an order that stated as follows:

1. [The Association's] Petition for Permanent Injunction is DENIED;

2. [Citadel's] request for Declaratory Judgment is GRANTED;

3. Declaratory Judgment is entered in favor of [Citadel] and against [the Association], and consistent therewith, [Citadel's] existing roof-mounted mechanical equipment is hereby authorized and approved and *is subject to the screening requirement found in the Declaration at Article VIII, §8.3(c)*;

4. [Citadel's] request for counsel fees is DENIED.

Trial Court Op., 1/24/2014, at 10; R.R. 1522a (emphasis added).

Thereafter, the Association asked Citadel about how it planned to screen the rooftop equipment. When Citadel declined to discuss the matter, the Association filed a "petition to compel" Citadel's compliance with the trial court's January 24, 2014, declaratory judgment and requested attorney fees and costs. The trial court conducted a hearing on January 7, 2016, at which both parties presented evidence.

The Association's witness, an architect, testified that to relocate the rooftop equipment on the ground would cost between $169,081 and $176,021. Were the rooftop equipment to remain in its current location, the screening would cost between $196,000 and $204,000. Citadel's architect generally agreed with those cost estimates, but he estimated the cost to relocate the equipment was greater than that estimated by the Association's witness. He doubted that "investing $200,000 would be a prudent decision" because the visual impact of the screening "could be

3

greater than the *de minimis* impact of the individual units that are there now." Notes of Testimony (N.T.), 1/7/2016, at 83-85; R.R. 1628a-30a.

On March 8, 2016, the trial court granted the Association's petition. The trial court was troubled that Citadel had adopted a "reversal of its trial position" by objecting to the installation of screening. Trial Court Op., 3/8/2016, at 5; R.R. 1742a. Accordingly, the trial court entered the following order:

> 1. [Citadel] is directed to comply with the January 24, 2014 Order in that the [e]quipment *is subject to* the screening requirements of §8.3(c) of the Declaration and must be separately screened as approved by the Architectural Control Committee consistent with Exhibits P-11, P-12 and D-1, and
>
> 2. [Citadel] shall pay [the Association's] attorneys' fees and costs incurred in enforcing the screening requirement set out in §8.3(c) of the Declaration and as determined to be applicable to the Equipment in the January 24, 2014[,] Order, with a hearing to assess fees and costs to be scheduled.
>
> It is further ORDERED that [Citadel's] cross-petition to strike [the Association's] petition and for counsel fees is DENIED.

Trial Court Op., 3/8/2016, at 6; R.R. 1743a. Citadel appealed to this Court, and it reversed.

This Court concluded that the trial court's January 24, 2014, order did not order screening of Citadel's equipment. At most, the order declared that the rooftop equipment was subject to the Declaration's provisions on screening. Concluding that the Association's petition to compel was improvidently filed, we remanded the matter to the trial court with directions to decide Citadel's request for attorneys' fees.

4

Thereafter, in May of 2017, the Association initiated a new action to enforce Article VIII, Section 8.3(c) of the Declaration. The Association requested a mandatory injunction to require "Citadel to install screening consistent with Section 8.3(c) of the Declaration." In support, it cited the trial court's findings from its 2014 opinion. Association Complaint at 2-3, ¶¶6, 14. In its answer and new matter, Citadel asserted that the screening of its rooftop equipment is "unreasonable, improper, and contrary to the express requirements of the Declaration" because:

> a. The visual impact of any screening structure would be substantially greater than the de minimis impact of the [e]quipment as currently placed on the rooftop of [Citadel's building];
>
> b. The estimated cost to screen the [e]quipment is approximately $200,000.00; and
>
> c. The estimated cost to screen the [e]quipment is grossly disproportionate to any benefit to the Association that could possibly be derived from the screening of the [e]quipment.

Citadel Answer at 9-10, ¶46; R.R. 31a-32a. On March 20, 2019, the trial court conducted an evidentiary hearing on the Association's injunction request. The Association presented both documentary evidence and testimony.

Robert Hankin, Chief Executive Officer of the Hankin Group, which built and developed the Eagleview Corporate Center, and President of the Board of the Association, testified. Hankin stated that the Association was pursuing the screening of Citadel's rooftop equipment because the trial court ruled in 2014 that screening was required by Section 8.3(c) of the Declaration. Hankin also explained that the Architectural Control Committee concluded that Citadel's rooftop equipment causes a visual distraction. Hankin testified that every building in the Eagleview Corporate Center that has equipment on its roof has a screen around that

5

equipment, with the exception of Citadel. He stated that screening was appropriate because when you "drive down the road, you can see … what looks like boxes of trash on the roof that don't belong there." N.T., 3/20/2019, at 45; R.R. 157a.

Hankin testified that the Association rejected Citadel's 2011 proposed screening plan because the screen was "a very distorted, kind of unusual large screen that tried to be architectural, and … would have taken away enormous value from the architectural integrity of the building." *Id.* at 35, 42; R.R. 147a, 154a.

Next, Carl Holden, the architect who testified for the Association at the earlier proceeding, testified. Holden stated that he had assembled several proposals for screening Citadel's rooftop equipment. The cost of those proposals ranged between $173,580 and $247,541. Holden explained that with screening, a person would see "one continual horizontal element[,]" which would be "less intrusive" than the equipment. *Id.* at 78; R.R. 190a.

In opposition, Citadel presented documentary and testimonial evidence. Its first witness was Robert Hankin, the Association's president.

Hankin conceded that the Association had not received any complaints about the equipment on Citadel's rooftop. He also acknowledged that at his 2011 deposition, he stated that a screen around the rooftop equipment would visually "ruin the architecture of the building" and be "inconsistent with the future buildings that [were] planned for that section of the [Eagleview Corporate Center]." *Id.* at 138; R.R. 250a. Hankin acknowledged that a screen around Citadel's equipment would be "inconsistent with the architectural guidelines[,]" but he felt it was "better than leaving it" unscreened. *Id.* at 135; R.R. 247a. Finally, Hankin conceded that there are other buildings in the Eagleview Corporate Center that have rooftop equipment, such as a cellular telephone pole and a lightning rod, that are not screened.

6

Jeffrey March, President and Chief Executive Officer of Citadel, next testified. He explained that Citadel offered to screen the equipment in 2011 in order to resolve the case. At that time, the Association responded that it would never accept a screen. Only after Citadel prevailed in the 2011 litigation did the Association demand screening. March testified that screening would have a negative impact on the appearance of the building.

Lee Cassaccio, an architect, testified for Citadel. He agreed with Holden's cost estimates for the proposed screens. He then testified about the visual impact of the proposed screening. Cassaccio explained that the rooftop equipment had been placed in "three arrays," with the largest piece of equipment in each array measuring four feet by four feet. N.T., 3/20/2019, at 190; R.R. 302a. The remaining pieces of equipment in each array were smaller, *i.e.*, the size of a suitcase. To screen the equipment would require the installation of a screen measuring 100 feet by 35 feet, which would have to be placed close to the edge of the roof and thus, be visible from the ground. He opined that the screen would be more distracting than the distant view of the equipment from the hilltop road.

Finally, Citadel presented Martin Carmody, a certified real estate appraiser. He testified that the size and placement of the equipment on Citadel's roof had no impact on the rental or sale of units in the building or other properties in the Eagleview Corporate Center. Carmody stated that the "equipment is very minor, small[,]" and "it is setback" from the edge of the roof. *Id.* at 205; R.R. 317a. He testified that it was "very difficult" to see the equipment from the road, and the equipment is "virtually invisible to a viewer from ground level[.]" *Id.*

On July 29, 2019, the trial court denied the Association's request for a mandatory injunction. It concluded that the Association had not established a clear right to relief, an injury or "urgent necessity to avoid injury." Trial Court Op.,

7

7/29/2019, at 8.  Greater injury would result from a mandatory injunction to Citadel to install costly screening to address the *de minimis* visual impact of the equipment from some roadways in the Eagleview Corporate Center.  The Association filed a motion for post-trial relief, which the trial court denied on October 23, 2019.

The Association then filed the instant appeal.

## Appeal

On appeal,[1] the Association raises three issues.[2]  First, the Association argues that the trial court erred because the Association had a clear right to relief, which it satisfied by facts established in the 2011 proceeding.  Second, the Association argues that the trial court erred by allowing Citadel to take inconsistent positions on the screening of its rooftop equipment, in violation of the doctrine of judicial estoppel.  Third, the Association argues that because its right to enforce the Declaration is absolute, it did not need to establish harm.

## Analysis

## Collateral Estoppel

In its first issue, the Association contends that the trial court's findings in the 2011 proceeding are dispositive of its request for a mandatory injunction. There, the trial court found that Citadel's rooftop equipment was visible from some interior roadways in the Center and, thus, "subject to the screening requirement found in the Declaration at Article VIII §8.3(c)."  Trial Court Op., 1/24/2014, at 10;

---

[1] In reviewing a grant or denial of a permanent injunction, which "will turn on whether the lower court properly found that the party seeking the injunction established a clear right to relief as a matter of law," our standard of review of a question of law is *de novo*, and our scope of review is plenary.  *Penn Square General Corporation v. County of Lancaster,* 936 A.2d 158, 167 n.7 (Pa. Cmwlth. 2007) (quotation omitted).

[2] For purposes of this opinion, we reordered the issues on appeal.

8

R.R. 1522a. Given that decision, Citadel should have been precluded from re-litigating this issue in the instant matter.

Principles of *res judicata* and collateral estoppel bar the re-litigation of claims and issues that have previously been decided. *Temple University and INA/CIGNA v. Workers' Compensation Appeal Board (Parson)*, 753 A.2d 289, 291 (Pa. Cmwlth. 2000). *Res judicata,* or claim preclusion, prevents a future suit between the same parties on the same cause of action after final judgment is entered on the merits of the action. *PMA Insurance Group v. Workmen's Compensation Appeal Board (Kelley)*, 665 A.2d 538, 541 (Pa. Cmwlth. 1995). Collateral estoppel, also known as issue preclusion, prevents re-litigation of an issue of law or fact between the same parties upon a different claim or demand. *Fiore v. Department of Environmental Resources*, 508 A.2d 371, 374 (Pa. Cmwlth. 1986). Either doctrine forecloses re-litigation of an issue of fact or law which was actually litigated and which was necessary to the original judgment. *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 632 A.2d 1302, 1304 (Pa. 1993).

In the 2011 proceeding, the trial court "approved" Citadel's rooftop equipment because it was "authorized" by Article VIII, Section 8.3(c) of the Declaration. The trial court also stated that Citadel's equipment was "subject to the screening requirement found in the Declaration of Article VIII, §8.3(c)." Trial Court Op., 1/24/2014, at 10; R.R. 1522a. However, Section 8.3(c) provides that screening may be required only where rooftop equipment is demonstrated to create a "visual distraction or interruption." Declaration, Art. VIII, §8.3(c); R.R. 491a. It is not an absolute requirement.

Regarding the visibility of Citadel's rooftop equipment, the only specific factual finding made by the trial court in the 2011 proceeding was as follows:

9

14. At the present time, *nearly all of [the] buildings within the [Eagleview Corporate] Center have roof mounted equipment*, much of which is extensive and large and is *visible from the ground and roadways* within the [Eagleview Corporate] Center. The [Hankin Group] has consistently marketed the buildings within the [Eagleview Corporate] Center as includ[ing] "roof mounted HVAC."

Trial Court Op., 1/24/2014, at 3, Finding of Fact No. 14 (emphasis added); R.R. 1515a. The trial court did not find, as fact, that Citadel's rooftop equipment created a "visual distraction or interruption" that necessitated screening.

The issue in the 2011 proceeding was whether Citadel could be ordered to remove its equipment from the roof and place it on the ground. Citadel sought, in its counter-claim, a declaration that its existing rooftop equipment was authorized. The trial court found in favor of Citadel. The trial court's statement that Citadel's rooftop equipment was visible was *obiter dictum* and not essential to the trial court's final judgment in favor of Citadel. *Schoepple v. Lower Saucon Township Zoning Hearing Board*, 624 A.2d 699, 706 (Pa. Cmwlth. 1993) ("collateral estoppel does not apply where the issue decided in the earlier proceeding was not material or necessary to adjudicate the cause of action").

The object of the trial court's declaratory judgment was to authorize Citadel's location of its mechanical equipment on the roof. We conclude that the issue of whether Citadel can be compelled by a mandatory injunction to install screening on its roof was neither addressed nor decided in prior litigation. Accordingly, we reject the Association's attempt to base its mandatory injunction upon the doctrine of collateral estoppel.

**Judicial Estoppel**

Next, the Association argues that Citadel could not oppose the mandatory injunction because Citadel acknowledged in prior litigation that rooftop

10

equipment should be screened. Based on this prior position, the Association argues that Citadel is judicially estopped from taking a contrary position in the instant mandatory injunction action.

Judicial estoppel prevents parties from "'playing fast and loose' with the judicial system by adopting whatever position suits the moment." *Sunbeam Corporation v. Liberty Mutual Insurance Company,* 781 A.2d 1189, 1192 (Pa. 2001) (quoting *Gross v. City of Pittsburgh,* 686 A.2d 864, 867 (Pa. Cmwlth. 1996)). This Court has explained that

> "[a]s a general rule, a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained." Accordingly, judicial estoppel is properly applied only if the court concludes the following: (1) that the appellant assumed an inconsistent position in an earlier action; and (2) that the appellant's contention was "'successfully maintained'" in that action.

*Canot v. City of Easton,* 37 A.3d 53, 60 (Pa. Cmwlth. 2012) (quoting *Black v. Labor Ready, Inc.,* 995 A.2d 875, 878 (Pa. Super. 2010)). In essence, judicial estoppel "prohibits parties from switching legal positions to suit their own ends." *Sunbeam Corporation*, 781 A.2d at 1192.

For judicial estoppel to apply, the prior position must have been verified or sworn. *Marazas v. Workers' Compensation Appeal Board (Vitas Healthcare Corporation)*, 97 A.3d 854, 860 (Pa. Cmwlth. 2014). In addition, the prior position must have been "successfully maintained." *Id.* As we have explained:

> Our courts interpret "successfully maintain" as different than litigating to conclusion. Settlement of a claim, despite binding the parties and ending an action, does not equal "successfully maintain." Thus, our courts uphold the "successfully maintain"

11

element of judicial estoppel based on the action of a decision-maker, not the actions of the parties.

*Id.* at 860-61 (internal citations omitted).

Here, the record does not support the Association's invocation of the doctrine of judicial estoppel. To resolve the Association's demand that Citadel remove its equipment from the roof, Citadel made a settlement offer to screen the equipment. The Association refused the offer. Citadel then sought, and obtained, the trial court's approval for the placement of the equipment on Citadel's rooftop.

Assuming, *arguendo*, Citadel's prior pleadings could be construed as an agreement that its rooftop equipment had to be screened, these statements are irrelevant. The only position successfully maintained by Citadel was that it was authorized to have equipment on its roof.

Citadel's successfully maintained position in the prior litigation allowed the placement of its equipment on the roof. Citadel never took the position that it could be required to install screening around its rooftop equipment. We reject the Association's invocation of judicial estoppel.

**Mandatory Injunction**

In its third issue, the Association contends that it has an absolute right to enforce the Declaration, without regard to the cost or whether the absence of screening will cause an injury. The Association contends that the trial court has allowed Citadel to evade compliance with the trial court's unappealed 2014 decision.

An injunction prohibits or commands virtually any type of action. *Big Bass Lake Community Association v. Warren,* 950 A.2d 1137, 1144 (Pa. Cmwlth. 2008). "It is an extraordinary remedy that should be issued with caution and 'only where the rights and equity of the plaintiff are clear and free from doubt, and where the harm to be remedied is great and irreparable.'" *Id.* (quoting 15 STANDARD

12

PENNSYLVANIA PRACTICE 2D, §83:2 (2005)).  The requirements for permanent injunctive relief are well settled: "a clear right to relief; an urgent necessity to avoid an injury that cannot be compensated in damages; and a finding that greater injury will result from refusing, rather than granting, the relief requested." *Big Bass Lake*, 950 A.2d at 1144.  "Even where the essential prerequisites of an injunction are satisfied, the court must narrowly tailor its remedy to abate the injury."  *Id.* at 1144-45 (citing *John G. Bryant Company, Inc. v. Sling Testing & Repair, Inc.,* 369 A.2d 1164, 1167 (Pa. 1977)).

An injunction that commands the performance of an affirmative act, a mandatory injunction, is the rarest form of injunctive relief and is often described as an "extreme" remedy.  *Big Bass Lake,* 950 A.2d at 1145.  "The case for a mandatory injunction must be made by a very strong showing, one stronger than that required for a restraining-type injunction."  *Id.*

The power to grant or refuse injunctive relief "rests in the sound discretion of the court under the circumstances and the facts of the particular case." *Woodward Township v. Zerbe*, 6 A.3d 651, 658 (Pa. Cmwlth. 2010) (quoting *Rick v. Cramp*, 53 A.2d 84, 88 (Pa. 1947)).  The action of the court on an injunction request may be set aside but only where there has been a clear abuse of discretion. *Woodward*, 6 A.3d at 658 (quoting *Rick*, 53 A.2d at 89).

Section 8.3(c) of Article VIII of the Declaration states that mechanical equipment must be screened, or placed, so as not to create a "physical distraction or interruption."  Declaration, Art. VIII, §8.3(c); R.R. 491a.  The requirement for screening is not absolute.  It may be required where the placement of equipment does not preserve the design lines of the building "without visual distraction or interruption."  *Id.*

13

The trial court found that the visual impact of Citadel's rooftop equipment was "*de minimis*." Trial Court Op., 7/29/2019, at 7. The trial court explained, based on photographs of the building, that the equipment "is barely visible." *Id.* In the 2011 proceeding, the trial court found that the majority of the buildings in the Eagleview Corporate Center have rooftop equipment, and some equipment is "more prominent than that of Citadel." *Id.* (citing Trial Court Op., 1/24/2014, at 8). Also in that proceeding, the Association's president testified that the screening of the equipment would create a visual distraction and be contrary to the purpose and intent of Article VIII, Section 8.3(c) of the Declaration.

The trial court concluded that screening was not an absolute requirement under the Declaration and that the Association failed to establish a clear right to a mandatory injunction. We agree. Accordingly, we need not address the Association's other argument that it did not have to prove that it would be injured if a mandatory injunction did not issue.

**Conclusion**

For all the above-stated reasons, we hold that the Association failed to establish the clear right to relief necessary for the issuance of an injunction. Therefore, we affirm the trial court's order denying the Association's request for a mandatory injunction.

_____
MARY HANNAH LEAVITT, President Judge

Judge Fizzano Cannon did not participate in the decision in this case.

14

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eagleview Corporate Center
Association,
          Appellant

       v.

Citadel Federal Credit Union

:
:
:
:
:
:   No. 52 C.D. 2020
:
:
:

## **O R D E R**

AND NOW, this 29th day of December, 2020, the order of the Court of Common Pleas of Chester County, dated October 23, 2019, denying the Eagleview Corporate Center Association's request for post-trial relief is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge